UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

ANEITA HENRY-LEE, individually and as the
ADMINISTRATRIX of the Goods, Chattels and Credits
of PETER C. A. LEE, deceased,

**DEFENDANT'S RESPONSE
TO PLAINTIFFS' FIRST
REQUEST FOR PRODUCTION
OF DOCUMENTS**

Plaintiffs,

Case No.: 08-cv-0089(DC)

-against-

Assigned to:
Hon. Denny Chin

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, POLICE OFFICER JOHN
BAUMMEISTER (shield#24846), POLICE OFFICER
MICHAEL INGRAM (shield#1727), KEVIN
ROUGHNEEN (shield#2942), JOHN DOE 1-10 (the
fictitious names of persons yet to be identified), JMR
REST CORP., d/b/a RORY DOLANS RESTAURANT
BAR, CITY OF YONKERS and YONKERS POLICE
DEPARTMENT,

Defendants.

------------------------------------------------------------------ X

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendant, **JMR REST.
CORP., d/b/a RORY DOLANS RESTAURANT BAR**, by its attorneys **MARKS, O'NEILL,
O'BRIEN & COURTNEY, P.C**., hereby respond and object to the plaintiffs' First Request for
Production of Documents as follows:

## GENERAL STATEMENT

1.     To the extent the defendant responds to any request, the defendant does not
concede the materiality of the matter to which any response refers.  Defendant's responses are
made explicitly made subject to, and without waiver now or in the future of, any objections
related to relevancy, materiality, competency, privilege, or overall admissibility.

2.     Defendant objects to any request for documents which is not limited in time.

3.     Defendant objects to these Document Requests to the extent that they demand information or documentation that is subject to the attorney-client privilege, work-product privilege, or may have been prepared solely in anticipation of litigation.

4.     Defendant shall not waive attorney-client privilege or work-product privilege if documents are produced inadvertently that would otherwise be privileged or immune from discovery.   In addition, such inadvertent disclosure of privileged documents or documents immune from discovery shall not constitute a waiver defendant's right to object to the use of said products during any proceeding during this litigation or otherwise.

5.     Defendant requests to plaintiff's First Request for the Production of Documents to the extent that the requests, or any subpart thereof, is overbroad, burdensome, vague, or seeks documents for some purpose other than that they could lead to the discovery of admissible evidence.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR DOCUMENTS

### DOCUMENT REQUEST NO. 1:

All records, logs or other writings showing when the defendant's premises opened and closed for business on January 3, 2006 and January 4, 2006.

### OBJECTION AND RESPONSE TO REQUEST NO. 1:

Defendant objects to this request on the grounds that it is burdensome, overbroad, and the documents are not calculated to lead to the discovery of admissible evidence.   Subject to the foregoing, the defendant is not in possession of any documents responsive to this request.

**DOCUMENT REQUEST NO. 2:**

The names and last known addresses of all defendant's employees and workers present at

defendant's premises from 9:00 p.m. on January 3, 2006 to 5:00 a.m. on January 4, 2006.

**OBJECTION AND RESPONSE TO REQUEST NO. 2:**

Defendant objects to this request on the ground that it is overbroad.  Subject to the

foregoing, the defendant's response is:

Steven Hughes
890 Mc Lean Avenue
Yonkers, New York 10704

Alan Slattery
(Address Unknown)

**DOCUMENT REQUEST NO. 3:**

Copies of any and all business names by which defendant's, **JMR REST.CORP., d/b/a**

**RORY DOLANS RESTAURANT BAR**, has been known by or called prior to and including

January 4, 2006.

**OBJECTION AND RESPONSE TO REQUEST NO. 3:**

Defendant objects on the grounds that this request is vague, burdensome, and overbroad.

Subject to the foregoing, the defendant's response is that defendant, **JMR REST.CORP., d/b/a**

**RORY DOLANS RESTAURANT BAR**, has not operated as or been known as any other name.

**DOCUMENT REQUEST NO. 4:**

Copies of any and all permits and licenses issued to defendant in connection with the

operation of the defendant's business establishment commonly known as Rory Dolan's

Restaurant Bar, as well as the name(s) in which said permits and licenses were issued.

**OBJECTION AND RESPONSE TO REQUEST NO. 4:**

Defendant objects on the grounds that this request is overbroad and burdensome.  Subject to the foregoing, the defendant's liquor license is attached hereto as Exhibit "A".

**DOCUMENT REQUEST NO. 5:**

The names and addresses of all officers, directors, managers and shareholders of the defendant.

**OBJECTION AND RESPONSE TO REQUEST NO. 5:**

The defendant objects to this request on the grounds that this request is vague and the documents are not calculated to lead to the discovery of admissible evidence.  Subject to the foregoing, the defendant's officers, managers, and directors are:

Rory Dolan
890 Mc Lean Avenue
Yonkers, New York 10704

Mike Brennan
890 Mc Lean Avenue
Yonkers, New York 10704

Joe Carty
890 Mc Lean Avenue
Yonkers, New York 10704

**DOCUMENT REQUEST NO. 6:**

Copies of any and all videotapes depicting defendant's premises from 9:00 p.m. on January 3, 2006 to about 4:00 a.m. on January 4, 2006.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 6:**

Defendant objects to this request on the grounds that it is vague and burdensome.  Subject to the foregoing, the defendant is not in possession of any document responsive to that request.

**DOCUMENT REQUEST NO. 7:**

Please produce laser color copies of all photographs in the defendant's possession and/or control relative to the subject incident.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 7:**

Defendant objects to this request on the grounds that it is extremely vague, overbroad, and burdensome. Subject to the foregoing, the defendant is not in possession of any documents responsive to that request.

**DOCUMENT REQUEST NO. 8:**

Copies of all materials relative to any and all complaints against defendant by any individual, entity, or organization for the period prior to and including the date of the subject accident.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 8:**

Defendant repeats and reiterates the foregoing General Statement. In addition, the defendant objects to this request on the ground that it is vague, overbroad, burdensome, and the documents are not calculated to lead to the discovery of admissible evidence. Subject to the foregoing, attached hereto as Exhibit "B" are copies of documentation related to previous alleged complaints against the defendant.

**DOCUMENT REQUEST NO. 9:**

Copies of all records, documents and materials relative to any and all citations, violations, summonses issued against defendant by any person, entity, agency or regulatory body prior to and including the date of the subject incident.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 9:**

Defendant objects to this request on the grounds that it is vague, overbroad, burdensome, and the documents are not calculated to lead to the discovery of admissible evidence.  Subject to the foregoing, the defendant is not in possession of any documentation related to this request.

**DOCUMENT REQUEST NO. 10:**

All records, documents and materials generated by defendant or in defendant's possession and/or control relative to the subject occurrence.

**OBJECTION AND RESPONSE TO REQUEST NO. 10:**

Defendant objects to this request on the grounds that it is vague and overbroad.  Subject to the foregoing, the defendant is not in possession of any documentation related to this request.

**DOCUMENT REQUEST NO. 11:**

All records, reports, statements and materials generated by defendant or in defendant's possession, regarding plaintiff's decedent.

**OBJECTION AND RESPONSE TO REQUEST NO. 11:**

Defendant objects to this request on the grounds that it is vague and overbroad.  Subject to the foregoing, the defendant is not in possession of any documentation related to this request.

**DOCUMENT REQUEST NO. 12:**

All statements made by any individual(s) who witnessed or otherwise has or had knowledge of the subject occurrence.

**OBJECTION AND RESPONSE TO REQUEST NO. 12:**

Defendant objects to this request on the grounds that it is vague, overbroad, and burdensome.  Subject to the foregoing, the defendant is not in possession of any documentation related to this request.

**DOCUMENT REQUEST NO. 13:**

All materials prepared and/or submitted by defendant or received from any private public and/or governmental or regulatory agency relative to the subject occurrence.

**OBJECTION AND RESPONSE TO REQUEST NO. 13:**

Defendant objects to this request on the grounds that it is vague, burdensome, and overbroad.  Subject to the foregoing, the defendant is not in possession of any documentation related to this request.

**DOCUMENT REQUEST NO. 14:**

The names and current addresses of all persons defendant knows or has reason to believe were witnesses to or have knowledge of the subject occurrence.

**OBJECTION AND RESPONSE TO REQUEST NO. 14:**

Defendant objects to the request on the grounds that it is overbroad, vague, and burdensome.  Subject to the foregoing, defendant believes that all co-defendants have knowledge of the subject occurrence.

**DOCUMENT REQUEST NO. 15:**

The name and address of every person, firm, business entity or other that the defendant claim caused, or in any way contributed to, the happening of the occurrence set forth in the

Complaint, or is responsible in whole or in part for any injuries and/or damages sustained by the plaintiffs, and over which the plaintiffs can with due diligence obtain jurisdiction over.

**OBJECTION AND RESPONSE TO REQUEST NO. 15:**

Defendant objects to the request on the grounds that it is overbroad.  Subject to the foregoing, defendant believes that if the allegations set forth in the Complaint are accurate, then all co-defendants contributed to the occurrence set forth in the Complaint.

**DOCUMENT REQUEST NO. 16:**

The names and addresses of any expert the defendants expect to call at the time of trial setting forth:

(a)     the subject matter on which each expert is expected to testify;

(b)     the substance of the facts and opinions each expert is expected to testify on;

(c)     the qualifications of each expert; and

(d)     a summary of the grounds for the opinion expressed by each expert.

**OBJECTION AND RESPONSE TO REQUEST NO. 16:**

Defendant objects to this request on the grounds that it is premature.  Defendant will, pursuant to Rule 26(b), disclose all information concerning experts at the appropriate time.

**DOCUMENT REQUEST NO. 17:**

Any and all original policies of insurance (both primary and excess) together with any and all endorsements relating thereto, whether or not physically annexed to the original policies of insurance, which were in force and effect and relating in any way to the occurrence which gave rise to this action.

**OBJECTION AND RESPONSE TO REQUEST NO. 17:**

Defendant is not in possession of any documentation related to this request.

Dated: Elmsford, New York
August 19, 2008

By: _____
James M. Skelly (JMS/4844)

**MARKS, O'NEILL, O'BRIEN
& COURTNEY, P.C.**
Attorneys for Defendant
**JMR REST.CORP., D/B/A RORY
DOLANS RESTAURANT BAR**
530 Saw Mill River Road
Elmsford, New York 10523
(914) 345-3701
File No.: 495.81515

TO:

**THE ADAM LAW OFFICE, P.C.**
Attorneys for Plaintiffs
**ANEITA HENRY-LEE, individually** and **as
the ADMINISTRATRIX of the Goods Chattels
and Credits of PETER C. A. LEE, deceased**
275 Madison Avenue - Suite 1100
New York, New York 10016
(212) 661-8780

**MICHAEL A. CARDOZO, ESQ.
CORPORATION COUNSEL**
Attorneys for Defendants
**THE CITY OF NEW YORK** and **NEW
YORK CITY POLICE DEPARTMENT**
100 Church Street
New York, New York 10007
(212) 788-0499

**CORPORATION COUNSEL, CITY OF YONKERS**
Attorneys for Defendants
**CITY OF YONKERS** and **YONKERS POLICE DEPARTMENT**
City Hall, 40 South Broadway
Yonkers, New York 10701
(914) 377-6256

## AFFIDAVIT OF SERVICE BY MAIL

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | : ss: |
| COUNTY OF WESTCHESTER | ) |

DEBBIE OLIVO, being duly sworn, deposes and says: deponent is not a party to this action, is over 18 years of age and resides in New York, New York.

On the  22nd day of August, 2008, deponent served the within **DEFENDANT'S RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS,** upon the parties herein stated below, by depositing and mailing same in a sealed envelope, with postage prepaid thereon, in an official depository of the U.S. Postal Service within the State of New York, at the following addresses:

TO:    **THE ADAM LAW OFFICE, P.C.**
Attorneys for Plaintiffs
**ANEITA HENRY-LEE, individually** and **as
the ADMINISTRATRIX of the Goods Chattels
and Credits of PETER C. A. LEE, deceased**
275 Madison Avenue - Suite 1100
New York, New York 10016
(212) 661-8780

**MICHAEL A. CARDOZO, ESQ.
CORPORATION COUNSEL**
Attorneys for Defendants
**THE CITY OF NEW YORK** and **NEW
YORK CITY POLICE DEPARTMENT**
100 Church Street
New York, New York 10007
(212) 788-0499

**CORPORATION COUNSEL, CITY OF YONKERS**
Attorneys for Defendants
**CITY OF YONKERS** and **YONKERS POLICE DEPARTMENT**
City Hall, 40 South Broadway
Yonkers, New York 10701
(914) 377-6256

_____
DEBBIE OLIVO

Sworn to before me on this
22nd day of August, 2008.

_____
NOTARY PUBLIC

{NY041996.1}



ON-PREMISES LIQUOR LICENSE

LICENSE EFFECTIVE    07/01/2004

2006 1 WEST OP 2441 252

LICENSE EXPIRES    06/30/2006

# NEW YORK STATE LIQUOR AUTHORITY

THE LICENSEE DESIGNATED BELOW IS HEREBY GRANTED PERMISSION, UNDER THE ALCOHOLIC BEVERAGE CONTROL LAW TO TRAFFIC IN ALCOHOLIC BEVERAGES PURSUANT TO THE TYPE OF LICENSE INDICATED IN THE UPPER LEFT HAND CORNER OF THIS CERTIFICATE AND ACCORDING TO THE STATUTES AND REGULATIONS PERTAINING THERETO.

THIS LICENSE SHALL NOT BE TRANSFERABLE TO ANY OTHER PERSON OR TO ANY OTHER PREMISES OR TO ANY OTHER PART OF THE BUILDING CONTAINING SUCH LICENSED PREMISES: IT SHALL NOT BE DEEMED A PROPERTY OR VESTED RIGHT AND MAY BE REVOKED AT ANY TIME PURSUANT TO LAW

SERIAL              1052133
COUNTY              WESTCHESTER
CERTIFICATE NUMBER  643036

JMR RESTAURANT CORP

890 MCLEAN AVENUE
YONKERS  NY   10704

FILING FEE            $90.00
LICENSE FEE           $3,072.00
CYCLICAL CREDIT GROUP   2

Edward F. Kelly
CHAIRMAN

SLA FORM 180-033 (11/99)

BEFORE COMMENCING OR DOING ANY BUSINESS FOR THE TIME FOR WHICH THIS LICENSE HAS BEEN ISSUED, THE SAID LICENSE SHALL BE ENCLOSED IN A SUITABLE WOOD OR METAL FRAME, HAVING A CLEAR GLASS SPACE AND A SUBSTANTIAL WOOD OR METAL BACK SO THAT THE WHOLE OF SAID LICENSE MAY BE SEEN THEREIN, AND SHALL BE POSTED UP AND AT ALL TIMES DISPLAYED IN A CONSPICUOUS PLACE IN THE ROOM WHERE SUCH BUSINESS IS CARRIED ON, SO THAT ALL PERSONS VISITING SUCH PLACE MAY READILY SEE THE SAME.

Certificate No. G643036

**STATE OF NEW YORK**
**DIVISION OF ALCOHOLIC BEVERAGE CONTROL**

| 84 Holland Avenue | 317 Lenox Avenue | 125 Main Street |
|---|---|---|
| Albany, NY 12208 | New York, NY 10027 | Buffalo, NY 14203 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

HEARING WILL BE HELD.

PLEASE TAKE FURTHER NOTICE that you may be represented by counsel. If you need a translator, you must bring one with you at your own expense.

PLEASE TAKE FURTHER NOTICE that you may plead to the charge(s) by mail instead of by personal appearance provided that a letter signed by you or your attorney, setting forth your plea of "Not Guilty" or "No Contest" is received by the Office of Counsel of the Division of Alcoholic Beverage Control at the above New York City address on or before the pleading date specified above.

PLEASE TAKE FURTHER NOTICE that the maximum penalty may be a revocation and forfeiture of the Bond filed by you, and or a civil penalty. In addition, if the Authority revokes the license, the Authority may proscribe the issuance of a license at the premises for a period of two years from the date of revocation of the license.

PLEASE TAKE FURTHER NOTICE: If you plead not guilty to the charge(s), a hearing will thereafter be scheduled at which you may appear with counsel, produce witnesses, and introduce evidence in your behalf.

PURSUANT TO SECTION 301 of the State Administrative Procedure Act, interpreter services shall be made available to deaf persons, at no charge, by the Authority.

Date:    11/22/2004

Licensee's name and residence address
DOLAN, PEADAR
35 KING STREET YONKERS NY 10704

DIVISION OF ALCOHOLIC BEVERAGE CONTROL
Robert F. Buckley, Associate Attorney
Office of Counsel

Licensee's Landlord
JOHN A VACCARO
242 KIMBALL AVENUE YONKERS NY 10704

317 Lenox Avenue
New York, New York 10027

Notice to Landlord:  As stated above, in the event the
disposition of this case results in a Revocation of the
license, the Authority may impose, as part of the penalty,
a two year prohibition against the issuance of any alcoholic
beverage license at these premises.

Tel:  [212] 961- 8343
Fax:  [212] 961-8316

Certified Mail # 7001 2510 0002 3248 8335





# YONKERS POLICE DEPARTMENT
### ROBERT W. CACACE JUSTICE CENTER
### 104 SOUTH BROADWAY
### YONKERS, NEW YORK 10701

## SCANNED

NOV 22 2004

# MEMORANDUM

**TO:**       **COMMISSIONER ROBERT TAGGART (TOC)**

**FROM:**     **CAPTAIN FRANK BRUNO, C.O. 2ND PRECINCT**

**DATE:**     **JANUARY 7, 2004**

**SUBJECT:**  **SLA INVESTIGATION**

Attached are reports of a SLA investigation conducted by P.O. Cromwell #325, P.O. Perricelli #932 and Sgt. Trabucco #70.

On January 1, 2004, a bouncer, Paul Ryan, at Rory Dolan's Bar, flagged Sgt. Trabucco down. Mr. Ryan told Sgt. Trabucco that he observed a male, Silverio Macias, waving a knife on the dance floor. Mr. Ryan escorted Mr. Macias off the dance floor and out of the establishment. Once Mr. Macias was outside he began waving the knife at Mr. Ryan and threatened him. Mr. Ryan disarmed Mr. Macias and in doing so was cut on the right pinky finger. Mr. Ryan wanted to press charges and have Mr. Macias arrested. Sgt. Trabucco and Mr. Ryan held Mr. Macias on the ground until back up Units arrived. P.O. Cromwell and P.O. Perricelli placed Mr. Macias under arrest. Upon placing Mr. Macias under arrest it was determined by Mr. Ryan and Sgt. Trabucco that the Bar be closed. Patrol Units remained in the area until the remaining patrons departed.

A SLA Referral, YPD-28 and YPD-1 were prepared and attached. Liquor License #2004 West Op 2441 903 expires 6/30/04.

Respectfully submitted,

Captain Frank Bruno
Commanding Officer, 2nd Precinct

FB/jw
Enclosures

EXECUTIVE DEPARTMENT
DIVISION OF ALCOHOLIC BEVERAGE CONTROL

# POLICE REFERRAL FORM

### Report of a Violation of Law Involving Premises Licensed to Sell Alcoholic Beverages

Refer to the "A. B. C. Manual for New York State Law Enforcement Agencies" for Sections of the A. B. C.
Law Covering Violations and for Information Regarding Evidence Necessary to Substantiate Charges.

Mail white and yellow copies of this report
TO:

**NEW YORK STATE LIQUOR AUTHORITY**
Central Office Investigation Bureau
11 Park Place
New York, NY 10007

Date: January 7, 2004

| Name of Licensee<br>Rory Dolans | D/B/A (Trade Name):<br>Rory Dolans Restaurant, Caterers & Bar |
|---|---|
| Address of Premises<br>890 McLean Avenue, Yonkers, New York 10704 | License Number<br>2004WestOP2441903 |

| Date and Time of Violation<br>1/1/04    0330 | Name of Person in Charge and<br>Title (Licensee, Manager,<br>Bartender, etc.)    Paul Ryan, Bouncer |
|---|---|

List specific violations and, for each violation, give (1) All pertinent facts to support the violations, (2) Names and addresses of all witnesses, and (3) Evidence to prove that Licensee, his Agents and Employees had knowledge of, or suffered or permitted the violation.

Silverio Macias, 2528 Melburne Ave., Baltimore, MD - suspect

Paul Ryan, 7 Valley Drive, Yorktown Heights, NY - Bouncer & victim

On January 1, 2004, Mr. Ryan flagged down Sgt. Trabucco and told him that he observed a male, Mr. Macias, waving a knife on the dance floor.  Mr. Ryan escorted Mr. Macias off the dance floor and out of the establishment.  Once Mr. Macias was outside he began waving the knife at Mr. Ryan and threatened him.  Mr. Ryan disarmed Mr. Marcias and in doing so was cut on the right pinky finger.  Mr. Ryan wanted to press charges and have Mr. Macias arrested.  Sgt. Trabucco and Mr. Ryan held Mr. Macias on the ground until back up Units arrived.  P.O. Cromwell and P.O. Perricelli placed Mr. Macias under arrest.

Upon placing Mr. Macias under arrested it was determined by Mr. Ryan and Sgt. Trabucco that the Bar be closed.  Patrol Units remained in the area until the remaining patrons departed.

IMPORTANT:   ATTACH COPIES OF ALL STATEMENTS AND AFFIDAVITS AND OFFICER'S REPORTS
PERTAINING TO THE ABOVE VIOLATIONS.

| Department:<br>Yonkers Police Department - 2nd Precinct | Reporting Officers:<br>Sgt. Henry Trabucco #70 |
|---|---|
| City, Town, or Village<br>Yonkers, New York | P.O. Neal Cromwell #325<br>P.O. Gina Perricelli #932 |

FORM P.D. 1 (1/94)        Retain Pink Copy of this report.        Mail white and yellow copies to State Liquor Authority

Form No.
YPD-28
~/82

**YONKERS POLICE DEPARTMENT**
**SUPERVISOR'S REPORT**

1. DISTRIBUTION
☐ DEPARTMENTAL    ☐ CONFIDENTIAL
☐ COMMAND USE/ATTN:

2. SPECIAL DISTRIBUTION
☐ CORP. COUNSEL
☐ OTHER

| 3. RELATED INCIDENT NUMBER | 4. INCIDENT TYPE | 5. WHEN REPORTED |
|---|---|---|
| 101 | Assault / Menacing | M 01 D 01 Y 04 T 0346 |

| 6. TIME OF OCCURRENCE | 7. LOCATION OF OCCURRENCE | 8. SECTOR/ZONE | 9. COMMAND INVOLVED |
|---|---|---|---|
| M 01 D 01 Y 04 T 0330 | 890 McLean Av. | 202 | 2ND PCT. |

| 10. OFFICERS/EMPLOYEES INVOLVED | 11. SHIELD | 12. ASSIGNMENT | 13. NATURE OF INVOLVEMENT | 14. INTERVIEWED YES / NO |
|---|---|---|---|---|
| Cromwell, Neal | 395 | 2ND PCT | ARRESTING OFFICERS | ✓ |
| Perricelli, Gina | 930 | 2ND PCT | ARRESTING OFFICER | ✓ |

| 15. CITIZEN INVOLVED | 16. CITIZEN'S ADDRESS | 17. PHONE NUMBERS |
|---|---|---|
| Ryan, Paul | 7 Valley Drive Yorktown Heights, NY | RES. 914-830-0048 BUS. 914-776-2946 |

| 18. AGE/D.O.B. | 19. RACE | 20. SEX | 21. PLACE OF EMPLOYMENT | 22. NATURE OF INVOLVEMENT |
|---|---|---|---|---|
| 37/9/16/66 | W | M | Rory Dolan's Bar (Bouncer) | Victim |

**EMPLOYEE INJURY**

| 23. NATURE OF INJURY | 24. CAUSE | |
|---|---|---|
| | | ☐ REMAINED ON DUTY ☐ EXCUSED FROM DUTY TIME |

| 25. HOSPITAL | ADMITTED ☐ YES ☐ NO | 26. ATTENDING PHYSICIAN | 27. POLICE SURGEON NOTIFIED TIME |
|---|---|---|---|

**UNDISCOVERED COMMERCIAL BURGLARY**

| 28. POINT OF ENTRY | 29. MEANS OF ENTRY | In block 30 indicate officers who should have discovered entry. |
|---|---|---|

| 30. TYPE/VALUE PROPERTY TAKEN | 31. SHOULD HAVE BEEN DISCOVERED? ☐ YES ☐ NO | 32. IF YES, BY ☐ SECTOR CAR # ☐ FOOT POST # | In narrative describe: - Visibility to patrol - Mitigating circumstances |
|---|---|---|---|

**POLICE M.V. ACCIDENT**

| 33. VEHICLE NO. | 34. EXTENT/LOCATION OF DAMAGE | 35. INJURIES ☐ POLICE EMPLOYEE ☐ CITIZEN | In block 10 list driver and all officers in Police vehicle. |
|---|---|---|---|

| 36. CIRCUMSTANCES ☐ PARKED ☐ RESPONDING TO JOB # ——— ☐ PURSUIT ☐ ROUTINE PATROL/TRAVEL | 37. ACCIDENT AVOIDABLE? ☐ YES ☐ NO | 38. DRIVER'S M.V. ACCIDENTS LAST 5 YEARS | In narrative describe: - Circumstances - All witnesses - Contributing factors |
|---|---|---|---|

**LOSS/DAMAGE**

| 39. TYPE OF EQUIPMENT | 40. MAKE | 41. MODEL | 42. ☐ DEPT. ☐ SER. # | In block 10 indicate officer responsible for or lost to use item. |
|---|---|---|---|---|

| 43. WHEN LAST SEEN/INSPECTED | 44. LAST SEEN ☐ INSPECTED BY: | 45. EXTENT/NATURE OF DAMAGE | In narrative describe: - Custodial chain - Circumstance |
|---|---|---|---|

**FIREARM CHEMICAL AGENT DISCHARGE**

| 46. WEAPON/MAKE & MODEL | 47. FIREARM SERIAL NO. | 48. NUMBER ROUNDS FIRED | In narrative describe: - Precipitating events - General environment - Points of discharge |
|---|---|---|---|

| 49. ACCIDENTAL ☐ YES ☐ NO | 50. INJURIES ☐ YES ☐ NO | 51. DAMAGE ☐ YES ☐ NO | 52. AUTHORIZED WEAPON: ☐ YES ☐ NO AMMO: ☐ YES ☐ NO | 53. WEAPON IMPOUNDED ☐ YES ☐ NO P.C. # ——— | - Points of impact - All witnesses - Resulting affects |
|---|---|---|---|---|---|

**OTHER INCIDENT**

| 54. BRIEFLY SUMMARIZE |
|---|
| S.L.A. NOTIFICATION Assault / Menacing in a Bar |

55. NARRATIVE: ADDITIONAL INFORMATION WHICH IS AN EXTENSION OF THE ABOVE BOXES, DESCRIPTION OF THE INCIDENT; WITNESS INFORMATION: NAMES OF ASSISTING POLICE PERSONNEL; INVESTIGATIVE ACTIONS & RESULTS, IF NECESSARY CONTINUE ON A YPD-3.

The undersigned sergeant, while working the McLean Av detail for New Years Eve 01/01/04, was flagged down by Paul Ryan - a bouncer at the Rory Dolan's Bar. Mr. Ryan related that while working inside the bar located at 890 McLean Av, he observed a male Hispanic (later identified as Silverio Macias, DOB 3/1/64 of 2528 Melburne Av, Baltimo Maryland) waving a knife on the dance floor. Ryan escorted Macias off the dance floor and out of the establishment. Once outside, the suspect began waving the knife at Ryan and threatened him. At this time, Ryan disarmed Macias, and in doing so was cut on the —

| 56. SUPERVISOR'S CONCLUSION | 57. VIOLATIONS: ☐ RULES & REG. # ☐ POLICY & PROC. # ☐ GEN'L. ORDERS # | 58. RELATED ALARM |
|---|---|---|
| Assault / Menacing at Bar | | |

| 59. SUPERVISOR'S ACTION TAKEN/RECOMMENDED | 60. INTERNAL AFFAIRS NOTF'D. IF YES, TIME & PERSON NOTIFIED |
|---|---|
| This report. Notification to S.L.A. | No |

| 61. REPORTING SUPERVISOR Sgt. Speakman TRABUCCO | SHIELD 70 | 62. COMMUNICATION LOG NOTF'D IF YES, TIME & PERSON NOTIFIED N/A |
|---|---|---|

| 63. COMMANDING OFFICER ENDORSEMENT | SIGNATURE | CONCUR? ☐ YES ☐ NO | COMMENTS |
|---|---|---|---|

| Form #<br>YPD-3 | YONKERS POLICE DEPARTMENT<br>SUPPLEMENTARY REPORT | S T A T U S<br>[ ] ACTIVE<br>[ ] INACTIVE | CLEARED UP<br>[ ] ARREST<br>[ ] WARRANT<br>OBTAINED | [ ] REFERRED TO Y.S.D. | [ ] NO PROSECUTION | [ ] REFERRED TO OTHER (specify) |
|---|---|---|---|---|---|---|
| | | | | [ ] RETURNED FOR UF<br>INVESTIGATION | [ ] UNFOUNDED | [ ] OTHER: |

| SPECIAL<br>DISTR. | [ ] Youth Svc. Div. [ ] Det. Div. [ ] Pub. Health<br>[ ] Pub. Works [ ] D.A. [ ] Other | 1. INCIDENT NUMBER<br>101 | 2. TYPE OF OFFENSE/INCIDENT<br>ASSAULT / MENACING |
|---|---|---|---|

| 3. DATE OF<br>INCIDENT/<br>OFFENSE | M 01 D 01 Y 04 T 0340 | 4. PLACE OF OCCURRENCE<br>890 McLean Av. | 5. CLASSIFICATION AFTER INVESTIGATION |
|---|---|---|---|

| 6. COMPLAINANTS NAME (Last, first, middle) (Firm name)<br>RYAN, PAUL | 7. | SOLVABILITY FACTORS<br>FOR INVESTIGATION |
|---|---|---|

| 8. COMPLAINANTS ADDRESS<br>7 Valley Dr., Yorktown Heights, NY | | | | | | | | |
|---|---|---|---|---|---|---|---|---|

| 9. [X] NARRATIVE CONTINUATION [ ] INVESTIGATIVE PROGRESS [ ] ADDITIONAL INFORMATION [ ] CLEAR UP/RECOVERED PROPERTY |
|---|

10. NARRATIVE

RIGHT PINKY FINGER. RYAN'S HAND WAS BANDAGED ᵃ
WITH GAUZE. RYAN RELATED THAT HE WANTED TO ᵇ
PRESS CHARGES AND HAVE THE SUSPECT ARRESTED. ᶜ
AT THIS TIME THE UNDERSIGNED ALONG WITH RYAN ᵈ
DETAINED SUSPECT AND HELD HIM ON THE GROUND ᵉ
UNTIL BACK UP UNITS ARRIVED. SUSPECT WAS PLACED ᶠ
UNDER ARREST BY P.O.'S PERRICELLI #832 AND CROM- ᵍ
WELL #325. (SEE YPD-1 ATTACHED). UPON PLACING ʰ
SUSPECT UNDER ARREST THE UNDERSIGNED ALONG WITH ⁱ
RYAN DETERMINED THAT THE BAR WOULD CLOSE. PATROL ʲ
UNITS REMAINED IN THE AREA UNTIL THE REMAINING ᵏ
PATRONS DEPARTED. ˡ
    A REPORT IS TO BE SENT TO THE STATE LIQUOR ᵐ
AUTHORITY FOR NOTIFICATION AND FOLLOW UP. ⁿ
RORY DOLAN'S LIQUOR LICENSE NUMBER: 2004 WEST OP ᵒ
2441903. ᵖ

| 11. PROPERTY<br>RECOVERY | [ ] Yes<br>[ ] No VALUE $ | 12. PROPERTY CLERK NO. | 13. ARREST(s)<br>[X] Yes [ ] No NO. 1 | 14. MULTIPLE CLEAR-UP<br>[ ] Yes [ ] No |
|---|---|---|---|---|

| 15. ALARM NUMBER | 16. TELETYPE [ ] Sent [ ] Priority<br>[ ] Cancelled [ ] Suspect | 17. TECHWORK DONE [ ] Sketch duration<br>[ ] Composites [ ] Fingerprints [ ] Other | 18. TECHWORK PERFORMED BY |
|---|---|---|---|

| 19. SOLVABILITY FACTORS<br>ELIMINATED BY INVESTIGATION<br>DEVELOPED BY INVESTIGATION<br>REMAINING FOR INVESTIGATION | 20. DATE SUBMITTED<br>1/6/04 | 21. INVESTIGATING OFFICER (Name)<br>SGT. — TRABOCCO | Shield No. 1<br>70 |
|---|---|---|---|
| | 22. CERTIFIED BY | CONCUR<br>[ ] Yes [ ] No | |

USE BLACK BALLPOINT. PRESS FIRMLY. USE HARD BACKING

| Form No YPD-1 (Rev. 5-80) | YONKERS POLICE DEPARTMENT CRIME INVESTIGATION REPORT | OFFENSE CLASSIFICATION (Records Use ONLY) | | OFFENSE CODE |
|---|---|---|---|---|

| CLEARED BY | | | 1 INCIDENT NO | 2 OFFENSE TYPE |
|---|---|---|---|---|
| □ ARREST | ☑ WARRANT OBTAINED | □ NO PROSECUTION | 101 | Assault 3° / Menacing |
| □ UNFOUNDED | □ CT ACTION ADVISED | □ OTHER | | |

| 3 WHEN REPORTED | M 01 | D 01 | Y 04 | 0340 | 4 LOCATION OF OFFENSE (House No. St. Apt No.) 890 McLean Ave | 5 PCT 02 | SECTOR 202 | 6 TYPE OF PREMISES WHERE CRIME OCCURED BAR |
|---|---|---|---|---|---|---|---|---|

| 7 WHERE REPORTED (If other than No 4) #4 | 8 TIME OF OCCUR A | M 01 | D 01 | Y 04 | 0330 | 9 DAY OF WEEK THU | 10 WEATHER CLOUDY | 11 VISIBLE TO PATROL □ Yes ☑ No | 12 GRID |
|---|---|---|---|---|---|---|---|---|---|

13 N⁰ of VICTIMS 1

| 14 VICTIM'S NAME (Last, first, m - If firm, name & type of business) RYAN, PAUL | 15 VICTIM'S ADDRESS (House No. St. Apt No. City) 7 Valley Dr, Yorktown Hts 10598 | 16 RES PHONE 830-0048 | A |
|---|---|---|---|

| 18. AGE/D.O.B 37, 9/16/66 | 19. RACE W | 20 SEX M | 21 PLACE OF EMPLOYMENT/SCHOOL ATTENDING Rory Dolan's Bar (Bouncer) | 22 RELATION TO PERPETRATOR NONE | 17 BUS PHONE 776-2946 | B |
|---|---|---|---|---|---|---|

| 23 VICTIM INJURED? ☑ Yes □ No | 24 NATURE OF INJURY: Laceration to Finger | 25. HOSPITAL N/A | Admitted? □ Yes □ No | 26. ATTENDING PHYSICIAN N/A | C |
|---|---|---|---|---|---|

27. INDICATE WITH PROPER CODES IN BOXES PROVIDED, PERSONS RELATIONSHIP TO INVESTIGATION W1-Witness No 1/ W2-Witness No 2/ R-Reporting Person/ D-Discoverer/ PK-Person Knowledgeable/ PC-Person Canvassed/ (Indicate also if appropriate) NI-Not Interviewed or X-Provided No Information

| 28. PERSON INTERVIEWED | 29. AGE | 30. ADDRESS/ADDRESS CHECKED | 31 APT | 32 PHONE NO's | |
|---|---|---|---|---|---|
| | | | | | E |
| | | | | | X F |
| | | | | | X G |
| | | | | | H |

33 USING APPROPRIATE CODE IN THE BOXES INDICATE WHO CAN IDENTIFY SUSPECT    V-Victim/ W1-Witness No 1/ W2-Witness No 2/ R-Reporting Person

| 34 SUSPECT No.1 (NAME) Include AKA Information MACIAS, SILVERIO | ☑ | SUSPECT No 2 (NAME) Include any AKA Information | |
|---|---|---|---|

| 35. SUSPECT No 1 MAY BE LOCATED AT 2528 Melborne Ave, Baltimore, Md | | D.O.B 3/1/64 | SUSPECT No 1 MAY BE LOCATED AT | |
|---|---|---|---|---|

| 36 SUSPECT No 1 DESCRIPTION | | | | | | SUSPECT No 2 DESCRIPTION | | | | | | | X K |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Age 39 | Race H | Sex M | Hgt 5-02 | Wgt 135 | Hair, color; length, style BRW - NORMAL | Age | Race | Sex | Hgt | Wgt | Hair color, length, style | D O B | X L |

(Further describe each suspect using facial hair, complexion, identifying scars and characteristics and clothing)

| BLUE JEANS, BLK BOOTS, GREEN JACKET | | |
|---|---|---|

| NICKNAME/s | 37. ARREST ☑ Yes □ No | NICKNAME/s | ARREST □ Yes □ No |
|---|---|---|---|

| 38. VEHICLE STATUS □ Stolen □ Recovered □ Suspect □ Target | 39. MAKE/MODEL | 40. YEAR | 41. TYPE | 42. COLORS (Top/bottom) | 43 IDENTIFYING CHARACTERISTICS |
|---|---|---|---|---|---|

| 44. LICENSE PLATE No & REGISTRATION | State | Year | 45 VIN/BICYCLE SERIAL No. | 46. TELETYPE ALARM No. | 47 LOSS VALUE | 48 REC VALUE |
|---|---|---|---|---|---|---|

49. INDICATE WITH PROPER CODES IN BOXES PROVIDED THE STATUS OF ITEMS LISTED S-STOLEN, R-RECOVERED, D-DAMAGED, E-EVIDENCE, F-FOUND

| 50. TYPE OF PROPERTY TAKEN | 51. PROPERTY DESCRIPTION & IDENTIFYING INFORMATION | Code |
|---|---|---|
| | | |
| | | |
| | | |

| 52. POINT OF ILLEGAL ENTRY/MEANS OF ATTACK PHYSICAL | 53 TYPE OF INSTRUMENT OR WEAPON KNIFE | 54 LOSS TOTAL | 55 REC TOTAL |
|---|---|---|---|

56. NARRATIVE Summarize details of crime/describe sequence of events, additional information which extends the above boxes, names of assisting officers

R/C 205 RESPONDED TO 890 McLEAN AVE ON A REPORT OF A DISPUTE, UPON ARRIVAL ASSIGNED SPOKE WITH THE COMPLAINANT WHO RELATED THE SUSPECT WAS ON THE DANCE FLOOR, INSIDE THE BAR, WAVING A KNIFE IN THE AIR. THE COMPLAINANT ESCORTED THE SUSPECT OUT OF THE BAR. ONCE OUTSIDE THE SUSPECT TOOK OUT THE KNIFE AGAIN AND BEGAN TO POINT IT AT THE COMPLAINANT, THREATENING HIM. AT THIS TIME THE COMPLAINANT ATTEMPTED TO REMOVE THE KNIFE FROM THE SUSPECT AND WAS CUT ON HIS RIGHT PINKY FINGER. THE SUSPECT WAS DETAINED BY SGT. TRABUCCO #70 JUST PRIOR R/C 205 ARRIVED. ONCE R/C 205

| OBJECT OF ATTACK | |
|---|---|
| WEAPONS/MEANS | |
| BURG. ENTRY | |
| ITEM 1 VALUE | CODE |
| ITEM 2 VALUE | |
| ITEM 3 VALUE | |
| ITEM 4 VALUE | |

| 57 PHYSICAL EVIDENCE YES | 58 CONNECTED INCIDENT No's | 59 REQUIRED FOLLOW-UP/RECOMMENDATIONS CLEARED BY ARREST | CASE STATUS |
|---|---|---|---|

| 60 REPORTING OFFICERS (Names) PO Cromwell CROMWELL PO Perricelli | SHIELD No's 325 9332 | 61 NOTIFICATION REQUIRED □ Yes □ No | 62 NOTIFICATION BY | QUALITY REVIEW BY: |
|---|---|---|---|---|
| | | 63 CERTIFIED BY Sgt #32 | | |

YPD-3

**YONKERS POLICE DEPARTMENT**
**SUPPLEMENTARY REPORT**

STATUS: ☐ ACTIVE  ☐ INACTIVE
CLEARED BY: ☐ ARREST  ☐ WARRANT OBTAINED
☐ REFERRED TO Y.S.O.  ☐ RETURNED FOR UF INVESTIGATION
☐ NO PROSECUTION  ☐ UNFOUNDED
☐ REFERRED TO OTHER (identify)  ☐ OTHER.

SPECIAL CASES: ☐ Youth Svc. Dev.  ☐ Dist. Dev.  ☐ Port Review ☐ Pub. Works  ☐ D.A.  ☐ Other

1. INCIDENT NUMBER

*101*

2. TYPE OF OFFENSE INCIDENT

*ASSAULT 3° / MENACING*

3. DATE OF INCIDENT OFFENSE  M *01*  D *01*  Y *04*  *0340*

4. PLACE OF OCCURRENCE  *890 McLean Ave*

5. CLASSIFICATION AFTER INVESTIGATION

6. COMPLAINANTS NAME (Last, first, middle) (firm names)  *RYAN, PAUL*

7. SOLVABILITY FACTORS FOR INVESTIGATION

8. COMPLAINANTS ADDRESS  *7 VALLEY DR, YORKTOWN HTS*

9. ☑ NARRATIVE CONTINUATION  ☐ INVESTIGATIVE PROGRESS  ☐ ADDITIONAL INFORMATION  ☐ CLEAR UP/RECOVERED PROPERTY

10. NARRATIVE

*ARRIVED, THE SUSPECT WAS PLACED UNDER ARREST, READ HIS MIRANDA WARNINGS* a
*AND TRANSPORTED TO CENTRAL BOOKING. UPON ARRIVAL AT CENTRAL BOOKING* b
*THE SUSPECT WAS BOOKED BY LT. VASSALLO. THE SUSPECT WAS PLACED IN* c
*A HOLDING CELL AND BEGAN TO BANG HIS HEAD AGAINST THE BARS AND* d
*RELATED HE PLANNED TO HARM HIMSELF. IT SHOULD BE NOTED THAT THE* e
*SUSPECT WAS HIGHLY INTOXICATED AT THE TIME. R/C 205 TRANSPORTED* f
*THE SUSPECT FROM CENTRAL BOOKING TO ST. JOSEPH'S HOSPITAL FOR TREAT-* g
*MENT. ONCE MEDICAL TREATMENT WAS RENDERED, THE SUSPECT WAS TRANS-* h
*PORTED BACK TO CENTRAL BOOKING. HIS BOOKING CHARGES WERE ASSAULT* i
*3° AND MENACING. THE SUSPECT WAS LODGED AT CENTRAL BOOKING. A* j
*SUPPORTING DEPOSITION WAS OBTAINED FROM THE COMPLAINANT, AND IS ATTACH-* k
*ED. ASSIGNED WILL RESPOND TO THE DA'S OFFICE TO FILE CHARGES. RORY DOLAN'S* l
*LIQUOR LICENSE NUMBER: 2004 WEST UP 2441 903. THE WEAPON RE-* m
*COVERED WAS PROPERTY CLERKED AT THE 2ND PCT.* n

11. PROPERTY RECOVERED BY / VALUE

12. PROGRESS FOLLOW-UP

13. ARREST/S ☐ YES ☐ NO

14. MULTIPLE CLEARED BY

15. ALARM NUMBER

16. TELETYPE

TELEPHONE DONE

17. TELETYPE PERFORMED BY

18. SOLVABILITY FACTORS
ELIMINATED BY INVESTIGATION
DEVELOPED BY INVESTIGATION
REMAINING FOR INVESTIGATION

19. DATE SUBMITTED  *1-1-04*

20. INVESTIGATING OFFICER'S Name  *R. Connell* 335/733

*Sgt. B. Cole* *3°*

STATE OF NEW YORK
EXECUTIVE DEPARTMENT
DIVISION OF ALCOHOLIC BEVERAGE CONTROL

# POLICE REFERRAL FORM

### Report of a Violation of Law Involving Premises Licensed to Sell Alcoholic Beverages

Refer to the ''A. B. C. Manual for New York State Law Enforcement Agencies'' for Sections of the A. B. C. Law Covering Violations and for Information Regarding Evidence Necessary to Substantiate Charges.

Mail white and yellow copies of this report
TO:

**NEW YORK STATE LIQUOR AUTHORITY**
Central Office Investigation Bureau
11 Park Place
New York, NY 10007

Case # 13889

SCANNED

FEB 05 2004

Date: January 7, 2004

| Name of Licensee | D/B/A (Trade Name): |
|---|---|
| Rory Dolans | Rory Dolans Restaurant, Caterers & Bar |

| Address of Premises | License Number |
|---|---|
| 890 McLean Avenue, Yonkers, New York 10704 | 2004WestOP2441903 |

| Date and Time of Violation | | Name of Person in Charge and Title (Licensee, Manager, Bartender, etc.) |
|---|---|---|
| 1/1/04 | 0330 | Paul Ryan, Bouncer |

List specific violations and, for each violation, give (1) All pertinent facts to support the violations, (2) Names and addresses of all witnesses, and (3) Evidence to prove that Licensee, his Agents and Employees had knowledge of, or suffered or permitted the violation.

Silverio Macias, 2528 Melburne Ave., Baltimore, MD - suspect

Paul Ryan, 7 Valley Drive, Yorktown Heights, NY - Bouncer & victim

On January 1, 2004, Mr. Ryan flagged down Sgt. Trabucco and told him that he observed a male, Mr. Macias, waving a knife on the dance floor. Mr. Ryan escorted Mr. Macias off the dance floor and out of the establishment. Once Mr. Macias was outside he began waving the knife at Mr. Ryan and threatened him. Mr. Ryan disarmed Mr. Marcias and in doing so was cut on the right pinky finger. Mr. Ryan wanted to press charges and have Mr. Macias arrested. Sgt. Trabucco and Mr. Ryan held Mr. Macias on the ground until back up Units arrived. P.O. Cromwell and P.O. Perricelli placed Mr. Macias under arrest.

Upon placing Mr. Macias under arrested it was determined by Mr. Ryan and Sgt. Trabucco that the Bar be closed. Patrol Units remained in the area until the remaining patrons departed.

IMPORTANT:    ATTACH COPIES OF ALL STATEMENTS AND AFFIDAVITS AND OFFICER'S REPORTS PERTAINING TO THE ABOVE VIOLATIONS.

| Department: | Reporting Officers: |
|---|---|
| Yonkers Police Department - 2nd Precinct | Sgt. Henry Trabucco #70 |
| City, Town, or Village | P.O. Neal Cromwell #325 |
| Yonkers, New York | P.O. Gina Perricelli #932 |

FORM P.D. 1 (1/94)        Retain Pink Copy of this report.        Mail white and yellow copies to State Liquor Authority

STATE OF NEW YORK
EXECUTIVE DEPARTMENT
DIVISION OF ALCOHOLIC BEVERAGE CONTROL

# POLICE REFERRAL FORM

### Report of a Violation of Law Involving Premises Licensed to Sell Alcoholic Beverages

Refer to the "A. B. C. Manual for New York State Law Enforcement Agencies" for Sections of the A. B. C. Law Covering Violations and for Information Regarding Evidence Necessary to Substantiate Charges.

Mail white and yellow copies of this report
TO:

**NEW YORK STATE LIQUOR AUTHORITY**
Central Office Investigation Bureau
11 Park Place
New York, NY 10007

Date: January 7, 2004

| Name of Licensee | D/B/A (Trade Name): |
|---|---|
| Rory Dolans | Rory Dolans Restaurant, Criteria & Bar |

| Address of Premises | License Number |
|---|---|
| 890 McLean Avenue, Yonkers, New York 10704 | 10747MestCP244190? |

| Date and Time of Violation | Name of Person in Charge and Title (Licensee, Manager, Bartender, etc.) |
|---|---|
| 1/1/04    0330 | Paul Ryan, Bouncer |

List specific violations and, for each violation, give (1) All pertinent facts to support the violations, (2) Names and addresses of all witnesses, and (3) Evidence to prove that Licensee, his Agents and Employees had knowledge of, or suffered or permitted the violation.

Silverio Macias, 2518 Welburne Ave., Baltimar, MD — suspect

Paul Ryan, 7 Valley Drive, Yorktown Heights, NY — Bouncer & victim

On January 1, 2004, Mr. Ryan flagged down Sgt. Trabucco and told him that he observed a male, Mr. Macias, waving a knife on the dance floor. Mr. Ryan escorted Mr. Macias off the dance floor and out of the establishment. Once Mr. Macias was outside he began waving the knife at Mr. Ryan and threatened him. Mr. Ryan disarmed Mr. Macias and in doing so was cut on the right pink finger. Mr. Ryan wanted to press charge and have Mr. Macias arrested. Mrs. Trabucco and Mr. Ryan held Mr. Macias on the ground until back up Units arrived. P.O. Cromwell and P.O. Petticelli placed Mr. Macias under arrest.

Upon placing Mr. Macias under arrested it was determined by Mr. Ryan and Sgt. Trabucco that the Bar be closed. Patrol Units remained in the area until the remaining patrons departed.

IMPORTANT:    ATTACH COPIES OF ALL STATEMENTS AND AFFIDAVITS AND OFFICER'S REPORTS
PERTAINING TO THE ABOVE VIOLATIONS.

| Department: | Reporting Officers: |
|---|---|
| Yonkers Police Department — 2nd Precinct | Sgt. Ryan Trabucco #70 |
| City, Town, or Village | P.O. Paul Cromwell #123 |
| Yonkers, New York | P.O. Joe Petticelli #132 |

FORM P.D. 1 (1/94)    Retain Pink Copy of this report.    Mail white and yellow copies to State Liquor Authority

* USE BLACK BALL POINT, PRESS FIRMLY, USE HARD BACKING *

| Form No YPD-1 (Rev. 5/89) | YONKERS POLICE DEPARTMENT CRIME INVESTIGATION REPORT | OFFENSE CLASSIFICATION (Records Use Only) | | OFFENSE CODE |
|---|---|---|---|---|

| CLEARED BY: □ ARREST ■ WARRANT OBTAINED □ NO PROSECUTION □ UNFOUNDED □ CT ACTION ADVISED □ OTHER | 1. INCIDENT NO. 101 | 2. OFFENSE TYPE Assault 3° / Menacing |
|---|---|---|

| 3. WHEN REPORTED | M 01 D 01 Y 04 | 0340 | 4. LOCATION OF OFFENSE (House No. St. Apt.No.) 890 McLean Ave | 5. PCT. 2 | SECTOR 202 | 6. TYPE OF PREMISES WHERE CRIME OCCURRED BAR |
|---|---|---|---|---|---|---|

| 7. WHERE REPORTED (If other than No.4) | 8. TIME OF OCCUR 01-01-04 0330 | 9. DAY OF WEEK THU | 10. WEATHER Cloudy | 11. VISIBLE TO PATROL □ Yes □ No | 12. GRID |
|---|---|---|---|---|---|

13. No. of Victims #4

| 14. VICTIM'S NAME (Last, first. m - If firm. name & type of business) RYAN, PAUL | 15. VICTIM'S ADDRESS (House No., St. Apt. No. City) 7 Valley Dr, Yorktown Hts 10598 | 16. RES. PHONE 830-0048 |
|---|---|---|
| | | 17. BUS. PHONE 776-2946 |

| 18. AGE/D.O.B. 37 7/10/66 | 19. RACE W | 20. SEX M | 21. PLACE OF EMPLOYMENT/SCHOOL ATTENDING RORY DOLAN'S BAR (Bouncer) | 22. RELATION TO PERPETRATOR (If identified) NONE |
|---|---|---|---|---|

| 23. VICTIM INJURED? ☑ Yes □ No | 24. NATURE OF INJURY/s LACERATION TO FINGER | 25. HOSPITAL N/A | Admitted? □ Yes □ No | 26. ATTENDING PHYSICIAN N/A |
|---|---|---|---|---|

27. INDICATE WITH PROPER CODES IN BOXES PROVIDED, PERSONS RELATIONSHIP TO INVESTIGATION W1-Witness No.1/ W2-Witness No.2/ R-Reporting Person/ D-Discoverer/ PK-Person Knowledgeable/ PC-Person Canvassed/ (Indicate also if appropriate) NI-Not Interviewed or X-Provided No Information.

| 28. PERSON INTERVIEWED | 29. AGE | 30. ADDRESS/ADDRESS CHECKED | 31. APT. | 32. PHONE NO's. |
|---|---|---|---|---|
| | | | | |
| | | | | X |
| | | | | X |
| | | | | |

33. USING APPROPRIATE CODE IN THE BOXES INDICATE WHO CAN IDENTIFY SUSPECT    V-Victim/ W1-Witness No.1/ W2-Witness No.2/ R-Reporting Person

| 34. SUSPECT No.1 (NAME) Include AKA Information MACIAS, SILVERIO | 34. SUSPECT No.2 (NAME) Include any AKA Information |
|---|---|
| 35. SUSPECT No.1 MAY BE LOCATED AT: 2528 Melbourne Ave, Baltimore, MD | 35. SUSPECT No.2 MAY BE LOCATED AT: |

| 36. SUSPECT No.1 DESCRIPTION | | | | | D.O.B. | 36. SUSPECT No.2 DESCRIPTION | | | | | D.O.B. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Age 39 | Race H | Sex M | Hgt. 5-02 | Wgt. 135 | Hair, color, length, style | 3/1/64 | Age | Race | Sex | Hgt. | Wgt. | Hair, color, length, style | |

(Further describe each suspect using facial hair, complexion, identifying scars and characteristics and clothing)
BLUE JEANS, BLK BOOTS, GREEN JACKET

| NICKNAME/s | 37. ARREST ☑ Yes □ No | NICKNAME/s | ARREST □ Yes □ No |
|---|---|---|---|

| 38. VEHICLE STATUS □ Stolen □ Recovered □ Suspect □ Target | 39. MAKE/MODEL | 40. YEAR | 41. TYPE | 42. COLORS (Top/bottom) | 43. IDENTIFYING CHARACTERISTICS |
|---|---|---|---|---|---|

| 44. LICENSE PLATE No. & REGISTRATION | State | Year | 45. VIN/BICYCLE SERIAL No. | 46. TELETYPE ALARM No. | 47. LOSS VALUE | 48. REC. VALUE |
|---|---|---|---|---|---|---|

49. INDICATE WITH PROPER CODES IN BOXES PROVIDED THE STATUS OF ITEMS LISTED. S-STOLEN/R-RECOVERED/ D-DAMAGED/ E-EVIDENCE/ F-FOUND

| 50. TYPE OF PROPERTY TAKEN | 51. PROPERTY DESCRIPTION & IDENTIFYING INFORMATION | Code |
|---|---|---|
| | | |

| 52. POINT OF ILLEGAL ENTRY/MEANS OF ATTACK PHYSICAL | 53. TYPE OF INSTRUMENT OR WEAPON KNIFE | 54. LOSS TOTAL | 55. REC. TOTAL |
|---|---|---|---|

56. NARRATIVE: Summarize sequence of crime/describe sequence of events, additional information which extends the above boxes, names of assisting officers.

R/C 205 RESPONDED TO 890 McLean Ave ON A REPORT OF A DISPUTE, UPON ARRIVAL ASSIGNED SPOKE WITH THE COMPLAINANT WHO RELATED THE SUSPECT WAS ON THE DANCE FLOOR, INSIDE THE BAR, WAVING A KNIFE IN THE AIR. THE COMPLAINANT ESCORTED THE SUSPECT OUT OF THE BAR, ONCE OUTSIDE THE SUSPECT TOOK OUT THE KNIFE AGAIN AND BEGAN TO POINT IT AT THE COMPLAINANT, THREATENING HIM. AT THIS TIME THE COMPLAINANT ATTEMPTED TO REMOVE THE KNIFE FROM THE SUSPECT AND WAS CUT ON HIS RIGHT PINKY FINGER. THE SUSPECT WAS DETAINED BY SGT. TRABUCCO #70 JUST PRIOR TO R/C 205 ARRIVED. ONCE R/C 205 CLEARED BY ARREST

| OBJECT OF ATTACK | |
|---|---|
| WEAPONS/MEANS | |
| BURG. ENTRY | |
| ITEM 1 VALUE | CODE |
| ITEM 2 VALUE | |
| ITEM 3 VALUE | |
| ITEM 4 VALUE | |

| 57. PHYSICAL EVIDENCE YES | 58. CONNECTED INCIDENT No's. | 59. REQUIRED FOLLOW-UP/RECOMMENDATIONS | CASE STATUS |
|---|---|---|---|

| 60. REPORTING OFFICERS (Names) PO Crommer CL Cromwell PO Perricelli | SHIELD No's 325 932 | 61. NOTIFICATION REQUIRED? □ Yes □ No | 62. NOTIFICATION BY: | QUALITY REVIEW |
|---|---|---|---|---|
| | | 63. CERTIFIED BY: Sgt M Ross #32 | CONCUR □ Yes □ No | |

| Form # YPD-3 (Jan 79) | YONKERS POLICE DEPARTMENT SUPPLEMENTARY REPORT | STATUS [ ] ACTIVE [ ] INACTIVE | CLEARED BY: [ ] ARREST [ ] WARRANT OBTAINED | [ ] REFERRED TO Y.S.D. [ ] RETURNED FOR UF INVESTIGATION | [ ] NO PROSECUTION [ ] UNFOUNDED | [ ] REFERRED TO OTHER (specify) _____ [ ] OTHER: |

| SPECIAL DISTR. | [ ] Youth Svc. Div. [ ] Pub. Works | [ ] Det. Div. [ ] D.A. | [ ] Pub Health [ ] Other | 1. INCIDENT NUMBER 101 | 2. TYPE OF OFFENSE/INCIDENT ASSAULT 3° / MENACING |

| 3. DATE OF INCIDENT OFFENSE | M 01 D 01 Y 04 T 0340 | 4. PLACE OF OCCURRENCE 890 McLean Ave | 5. CLASSIFICATION AFTER INVESTIGATION |

| 6. COMPLAINANTS NAME (Last, first, middle) (Firm name) RYAN, PAUL | | 7. | SOLVABILITY FACTORS FOR INVESTIGATION |

| 8. COMPLAINANTS ADDRESS 7 VALLEY DR, YORKTOWN HTS |

9. [X] NARRATIVE CONTINUATION  |  [ ] INVESTIGATIVE PROGRESS  |  [ ] ADDITIONAL INFORMATION  |  [ ] CLEAR UP/RECOVERED PROPERTY

10. NARRATIVE

ARRIVED, THE SUSPECT WAS PLACED UNDER ARREST, READ HIS MIRANDA WARNINGS — a

AND TRANSPORTED TO CENTRAL BOOKING. UPON ARRIVAL AT CENTRAL BOOKING — b

THE SUSPECT WAS BOOKED BY LT. VASSALLO. THE SUSPECT WAS PLACED IN — c

A HOLDING CELL AND BEGAN TO BANG HIS HEAD AGAINST THE BARS AND — d

RELATED HE PLANNED TO HARM HIMSELF. IT SHOULD BE NOTED THAT THE — e

SUSPECT WAS HIGHLY INTOXICATED AT THE TIME. RIC 205 TRANSPORTED — f

THE SUSPECT FROM CENTRAL BOOKING TO ST. JOSEPH'S HOSPITAL FOR TREAT- — g

MENT. ONCE MEDICAL TREATMENT WAS RENDERED, THE SUSPECT WAS TRANS- — h

PORTED BACK TO CENTRAL BOOKING. HIS BOOKING CHARGES WERE ASSAULT — i

3° AND MENACING. THE SUSPECT WAS LODGED AT CENTRAL BOOKING. A — j

SUPPORTING DEPOSITION WAS OBTAINED FROM THE COMPLAINANT, AND IS ATTACH- — k

ED. ASSIGNEE WILL RESPOND TO THE DA's OFFICE TO FILE CHARGES. RORY DOLAN'S — l

LIQUOR LICENSE NUMBER: 2004 WEST OP 2441 903. THE WEAPON RE- — m

COVERED WAS PROPERTY CLERKED AT THE 2ND PCT. — n

o
p
q
r
s
t
u
v
w
x
y
z
aa
bb
cc
dd

| 11. PROPERTY RECOVERY | [ ] Yes [ ] No   VALUE $ | 12. PROPERTY CLERK NO. | 13. ARREST(s) [✓] Yes [ ] No   NO. | 14. MULTIPLE CLEAR-UP Yes   No |

| 15. ALARM NUMBER | 16. TELETYPE : [ ] Sent [ ] Cancelled | [ ] Property [ ] Suspect | 17. TECHWORK DONE [ ] Composite [ ] Fingerprints | [ ] Sketch/diagram [ ] Other | 18. TECHWORK PERFORMED BY |

| 19. SOLVABILITY FACTORS: ELIMINATED BY INVESTIGATION DEVELOPED BY INVESTIGATION REMAINING FOR INVESTIGATION | 20. DATE SUBMITTED 1-1-04 | 21. INVESTIGATING OFFICER(S)  Name P.O. Cromwell CROMWELL / PERRICELLI | Shield No. 325/932 |

| 22. CERTIFIED BY: Sgt. M. Finn #32 | CONCUR Yes   No |

STATE OF NEW YORK : COUNTY OF WESTCHESTER

................................................................X

- Against -

SUPPORTING DEPOSITION

*SILVERIO MACIAS* Defendant (s)   DOB: 3/1/64
................................................................X

................................................................ , as and for a

Supporting Deposition in connection with an ( Information/Misdemeanor

Complaint/Felony Complaint ) filed or to be filed with Court against

the above named defendant (s) , does hereby make the following

allegations of fact :

I DAVE RYAN 9/19/06 AS WORKING AS A BOUNCER
AT RORY DOLANS "890 McLEAN AVE" Observed A MALE
Hispanic ID To me BY Yonkers Police AS
Silverio emmaes PULL OUT pocket KNIFE ON
Dave Ryan wave it ARpuND I Removed him
From BAR when we outside Suspect pulled knife
OUT AgAIN wAved it At me CAME towards me
with knife. I took knife out of Suspect HANDS
which time Suspect cut me Right pinky. I
flagged down Police AND Police took male Hispanic
into custody I wish to press charges

The above allegations of fact are made upon direct knowledge .

NOTICE : PURSUANT TO PENAL LAW , SECTION 210.45 , IT IS A CRIME
PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE
OF NEW YORK , FOR A PERSON , IN AND BY A WRITTEN INSTRUMENT , TO
KNOWLINGLY MAKE A FALSE STATEMENT OR TO MAKE A STATEMENT WHICH
SAID PERSON DOES NOT BELIEVE TO BE TRUE .

Affirmed under penalty of perjury
this ____ day of _____

LCB No. 9
3/7/79

Deponent

**NEW YORK STATE LIQUOR AUTHORITY**
**FULL BOARD DISPOSITION**
**MEETING OF 03/28/2006**

JMR RESTAURANT CORP                                    03/31/2006
890 MCLEAN AVENUE
YONKERS NY 10704

                                    Re:    1052133, WESTCHESTER OP 2441
                                           DO # 3726-2004/Case # 13372
                                           AGENDA ITEM NO. 2006-01077

Dear Licensee:

The Members of the Authority at their regular meeting on 03/28/2006 determined as follows with regard to the above captioned matter:

Terrence Flynn, Jr., Esq. appeared on 3/28/2006

CHARGES NO. 1 AND 4 IN THE FIRST PROCEEDING AND CHARGES NO. 7, 16, 17 AND 18 IN THE SECOND PROCEEDING ARE SUSTAINED

Penalty is the following:

        Civil Penalty: $15000.00
        7 Days Forthwith Suspension

Penalty Due by: 04/28/2006

If the above penalty is not complied with by 04/28/2006 the following will be imposed:

Bond Claim: $1000.00
Revocation

Charges no. 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14 in the first proceeding and charges no. 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, and 15 in the second proceeding, not having been sustained, they are therefore dismissed.

**NOTE:** A civil penalty must be paid in full, <u>no installments</u>, by **CERTIFIED CHECK, OFFICIAL BANK CHECK OR MONEY ORDER** payable to the *State Liquor Authority.* Mail payments to the **New York State Liquor Authority, Revenue Collections Unit (CP), 84 Holland Avenue, Albany, New York 12208,** by the above due date. To insure proper credit, please list your license serial number and name on the check.

If the Authority has to impose a Bond Claim, a demand for the bond claim will be made to your bonding company, who will then seek repayment from you and additional expenses may be incurred in connection with the restoration of the bond. You will be required to restore your bond, pursuant to Rule 9.7(b) of the Rules of the State Liquor Authority [9 NYCRR 81.7(b)], which has been forfeited by reason of this penalty, within 10 days. A restoration of the bond will be required to continue in business and avoid futher disciplinary proceedings.
cc:        file
                                           SECRETARY'S OFFICE
                                           [518] 402-4394
TERRENCE R. FLYNN, JR.                     secretarys_office@abc.state.ny.us
114-12 BEACH CHANNEL DRIVE
SUITE 9
ROCKAWAY PARK NY 11694

<u>NOTICE TO LICENSEE:</u>    **The original of this order which must be posted on premises, will be personally served upon you prior to or on the first day of the suspension period. Keep the license certificate on the premises until called for by an authorized representative of the Liquor Authority.**

## NEW YORK STATE LIQUOR AUTHORITY

IN THE MATTER OF PROCEEDINGS
TO SUSPEND, CANCEL OR REVOKE

License Number:            1052133 WESTCHESTER OP

Issued to:            JMR RESTAURANT CORP

Licensed Premises:    890 MCLEAN AVENUE
YONKERS, NY 10704

**WARNING!**
You are required to be present on the licensed premise on date suspension begins in order to surrender your license to a representative of this office. Your failure will be cause for revocation license

**ORDER OF SUSPENSION &**
**$15,000 CIVIL PENALTY**

Case No.:

13372 & 13889

Proceedings having been duly instituted pursuant to the provisions of the Alcoholic Beverage Control Law, (Chapter 478 of the Laws of 1934, as amended) to suspend, cancel or revoke the above license issued to the licensee for premises located at the address stated above and the licensee having duly pleaded "no contest" to the charges contained in the notice of hearing or a hearing having been duly held by the State Liquor Authority in connection with said proceedings, and

Said proceedings having been duly considered by the State Liquor Authority at a meeting duly held on <u>MARCH 28, 2006</u>, and due deliberation having been had thereon, and the Authority having duly adopted the findings of the hearing officer and duly found that

<u>FIRST PROCEEDING: DOCKET NO. 37262004/CASE NO. 13372</u>
1. That on 3/16/03, the licensee violated rule 54.3 of the Rules of the State Liquor Authority [9 NYCRR 48.3], in that it did not conform with all applicable building codes, and/or fire, health, safety and governmental regulations in that the licensee tampered with firefighting equipment; all cause for revocation, cancellation or suspension of the license in accordance with rule 36.1(f) of the Rules of the State Liquor Authority [9 NYCRR 53.1(f).
2. DISMISSED
3. DISMISSED
4. That on 10/17/03, in violation of subdivision 1 of section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a person or persons actually under the age of twentyone years.
5 – 14. DISMISSED

<u>SECOND PROCEEDING: DOCKET NO. 37272004/CASE NO. 13889</u>
1 – 6. DISMISSED
7. That on 5/21/04, in violation of subdivision 1 of section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a person or persons actually under the ages of twentyone years.
8 – 15. DISMISSED
16. That on and before 11/12/04 an on a continuing basis, the occurrence of noise, disturbance, misconduct or disorder in the licensed premises, in front of or adjacent to the licensed premises, or in the parking lot of the licensed premises  has resulted in the licensed premises becoming a focal point for police attention; all cause for revocation, cancellation, or suspension of the license in accordance with rule 36.1(q) of the Rules of the State Liquor Authority [9 NYCRR 53.1(q)].
17. That on and before 11/12/04 an on a continuing basis, the occurrence of noise, disturbance misconduct or disorder in the licensed premises, in front of or adjacent to the licensed premises, or in the parking lot of the licensed premises adversely affects or tends to affect the protection, health, welfare, safety or repose of the inhabitants of the area in which the licensed premises are located.; all cause for revocation, cancellation, suspension of the license in accordance with rule 36.1(q) of the Rules of the State Liquor Authority [9 NYCRR 53.1(q)].
18. That on and before 11/12/04, in violation of subdivision 1 and 3 of section 118 of the Alcoholic Beverage Control Law there has existed a sustained and continuing pattern of noise, disturbance, misconduct or disorder on or about the licensed premises, related to the operation of the premises or the conduct of its patrons, which adversely affects the health, welfare, or safety of the inhabitants of the area in which the licensed premises are located

**IT IS HEREBY ORDERED** that the license aforesaid issued to said licensee for the above described premises be, and the same hereby is **SUSPENDED\***, for the period hereinafter specified, and

**IT IS FURTHER ORDERED** that said licensee be, and hereby is, prohibited from trafficking in alcoholic beverages for the period beginning on <u>APRIL 20, 2006</u>, at 10 A.M.; and ending on <u>APRIL 27, 2006</u>, at 10 A.M.; and

**IT IS FURTHER ORDERED** that said licensee surrender said license forthwith to the State Liquor Authority or its duly authorized representative, upon commencement of this said period of suspension, and

**IT IS FURTHER ORDERED** that failure by the licensee to comply with the terms of this order shall result in the cancellation or revocation of the said license in accordance with the provisions of the Alcoholic Beverage Control Law.

Dated:    <u>March 31, 2006</u>

STATE LIQUOR AUTHORITY

Certified by

JACQUELINE HELD
Secretary's Office

DANIEL B. BOYLE

# NEW YORK STATE LIQUOR AUTHORITY
Hearing Bureau
317 Lenox Avenue
New York, New York 10027

----------------------------------------------------------------x

## IN THE MATTER OF PROCEEDINGS TO CANCEL OR REVOKE

Serial Number:                     Westchester OP 1052133

|  | Docket # | Case # |
|---|---|---|
|  | 3726/04 | 13372 |
|  | 3727/04 | 13889 |

Issued To:                        JMR Restaurant Corp

Licensed Premises:            890 McLean Avenue
                                        Yonkers, New York 10704

----------------------------------------------------------------x

BEFORE: Ed Rodriguez, Administrative Law Judge

Hearings were completed as of November 16, 2005 on the following charges set forth in 2 Notices of Pleading dated November 22 and November 23, 2004:

**As to Docket # 3726/04; Case # 13372 in Notice of Pleading of November 22, 2004:**
*Proceeding #1*

1. That on March 16, 2003, the licensee violated Rule 54.3 of the Rules of the State Liquor Authority [9 NYCRR 48.3], in that it did not conform with all applicable building codes, and/or fire, health, safety and governmental regulations in that the licensee tampered with firefighting equipment; all cause for revocation, cancellation or suspension of the license in accordance with Rule 36.1 (f) of the Rules of the State Liquor Authority [9 NYCRR 53.1(f)].

2. That on August 23 2003, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law.

3. That on October 17 2003, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law.

Westchester OP 1052133
Docket #s 3726/04, 3727/04                    2
Case #s  13372,  13889

4. That on October 17, 2003, in violation of subdivision 1 of Section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a person, or persons, actually under the age of twenty-one years. 

5. That on November 7, 2003, in violation of subdivision 2 of Section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted or procured to be sold, delivered or given away, alcoholic beverages to a visibly intoxicated person. 

6. That on November 29 2003, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law. 

7. That on November 29, 2003, in violation of subdivision 2 of Section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted or procured to be sold, delivered or given away, alcoholic beverages to a visibly intoxicated person. 

8. That on December 13, 2003, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law. 

9. That on December 19, 2003, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law. 

10. That on December 19, 2003, in violation of subdivision 2 of Section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted or procured to be sold, delivered or given away, alcoholic beverages to a visibly intoxicated person. 

11. That on December 27, 2003, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law.

Westchester OP 1052133
Docket #s 3726/04, 3727/04                    3
Case #s   13372,   13889

12. That on and before November 23, 2004 and on a continuing basis, the occurrence of noise, disturbance, misconduct or disorder in the licensed premise, in front of or adjacent to the licensed premise has resulted in the licensed premise becoming a focal point for police attention; all cause for revocation, cancellation or suspension of the license in accordance with Rule 36.1 (q) of the Rules of the State Liquor Authority [9 NYCRR 53.1 (q)]. 

13. That on and before November 23, 2004 and on a continuing basis, the occurrence of noise, disturbance, misconduct or disorder in the licensed premise, in front of or adjacent to the licensed premise, or in the parking lot of the licensed premise adversely affects or tends to affect the protection, health, welfare, safety or repose of the inhabitants of the area in which the licensed premise is located; all cause for revocation, cancellation or suspension of the license in accordance with Rule 36.1 (q) of the Rules of the State Liquor Authority [9 NYCRR 53.1 (q)].

14. That on and before November 23, 2004, in violation of subdivisions 1 and 3 of Section 118 of the Alcoholic Beverage Control Law, there has existed a sustained and continuing pattern of noise, disturbance, misconduct or disorder on or about the licensed premise, related to the operation of the premise or the conduct of its patrons, which adversely affects the health, welfare, or safety of the inhabitants of the area in which the licensed premise is located.

**As to Docket # 3727/04; Case # 13889 in Notice of Pleading of November 23, 2004:**
*Proceeding #2*

1. That on January 1, 2004, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law. 

2. That on February 1, 2004, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law. 

Westchester OP 1052133
Docket #s 3726/04, 3727/04        4
Case #s  13372,  13889

3. That on February 14, 2004, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law.



4. That on May 9, 2004, in violation of subdivision 1 of Section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a person, or persons, actually under the age of twenty-one years.



5. That on May 9, 2004, in violation of subdivision 2 of Section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted or procured to be sold, delivered or given away, alcoholic beverages to a visibly intoxicated person.



6. That on May 16, 2004, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law.



7. That on May 21, 2004, in violation of subdivision 1 of Section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a person, or persons, actually under the age of twenty-one years.



8. That on June 20, 2004, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law.



9. That on June 25, 2004, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law.



10. That on July 3, 2004, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law.



Westchester OP 1052133                    5
Docket #s 3726/04, 3727/04
Case #s  13372,  13889

11. That on July 4, 2004, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law. 

12. That on July 9, 2004, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law. 

13. That on July 23, 2004, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law. 

14. That on August 6, 2004, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law. 

15. That on August 13, 2004, the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation and/or an assault to occur on the licensed premise in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law. 

16. That on and before November 23, 2004 and on a continuing basis, the occurrence of noise, disturbance, misconduct or disorder in the licensed premise, in front of or adjacent to the licensed premise has resulted in the licensed premise becoming a focal point for police attention; all cause for revocation, cancellation or suspension of the license in accordance with Rule 36.1 (q) of the Rules of the State Liquor Authority [9 NYCRR 53.1 (q)]. 

17. That on and before November 23, 2004 and on a continuing basis, the occurrence of noise, disturbance, misconduct or disorder in the licensed premise, in front of or adjacent to the licensed premise, or in the parking lot of the licensed premise adversely affects or tends to affect the protection, health, welfare, safety or repose of the inhabitants of the area in which the licensed premise is located; all cause for revocation, cancellation or suspension of the license in accordance with Rule 36.1 (q) of the Rules of the State Liquor Authority [9 NYCRR 53.1 (q)]. 

18. That on and before November 23, 2004, in violation of subdivisions 1 and 3 of Section 118 of the Alcoholic Beverage Control Law, there has existed a sustained and continuing pattern of noise, disturbance, misconduct or disorder on or about the licensed premise, related to the operation of the premise or the conduct of its patrons, which adversely affects the health, welfare, or safety of the inhabitants of the area in which the licensed premise is located.

Donald Martin, Esq., represented the Authority.

Terrence Flynn, Jr., Esq.; of Flynn & Flynn, 114-12 Beach Channel Drive, Suite 9, Rockaway Park, New York 11694, represented the licensee and its two principals, Mr. Rory Dolan and Mr. Joseph Carty who appeared at the hearings.

Gina Perricelli, Neal Cromwell, Joseph Kostik, Richard Hurlburt, Christopher Melvin, Angelo Prestamo, Joseph Recine, Richard Madaffari, Dale Hughes, Bruce Grossman, Vincent Romano, Paul Api, Richard Gogola, Anthony Alaimo, and James Regan testified for the Authority.

Sean Cassidy, James Brown and Rory Dolan testified on behalf of the licensee.

Authority's Exhibits "1" through "28" were submitted in evidence.

Licensee's Exhibits "A" through "C" were submitted in evidence.

Memorandum of Law was submitted by both counsel post hearing.

The hearing was recorded on cassette tape and transcribed.

Based on the testimony and record in this case, the Administrative Law Judge makes the following

## FINDINGS OF FACT:

The establishment is a bar/restaurant with a dance floor located on McLean Avenue in Yonkers, New York, in an area of approximately 16 other licensed establishments in a strip approximately a little over a half-mile to a mile-long. The legal capacity is 605 persons. 245 for the party room/side room and 360 for the main bar room. The establishment is freestanding on its own in that it is half a block down across the street before there is another licensed premise. It is isolated from other bars directly on either side of it. Across the street approximately 500 feet away is the next licensed establishment. The premise is located in a mixed residential and commercial area. There are residences diagonally across the street consisting of two apartment houses consisting of six floors with approximately 8-10 apartments on each floor. The security staff wears

uniforms; black pants, shirts and a blazer with the premise name clearly seen. There are usually six persons working as security on weekends. Mr. Rory Dolan is the licensee's principal. Mr. James Brown is in charge of security.

*As to Charge 1 in Case #13372:*

*As to Sergeant Christopher Melvin:*

*As to March 16, 2003:*

**FINDINGS OF FACT:**

On March 16, 2003, at approximately 12:30 p.m., Sergeant Christopher Melvin (Yonkers Police Department) testified that there occurred a general alarm fire in Yonkers which required every firehouse to send fire personnel to the scene which was a major structural fire at 85 Bronx River Road. This location had been an occupied 6-7 story, 105 units building, which became completely gutted after the fire was extinguished. Other Fire Department agencies from Mount Vernon, New Rochelle, White Plains and New York City provided mutual aid to extinguish the fire and provide manpower support for the rest of Yonkers during the emergency. Water pressure in that general area lost pressure so that the NYC Fire personnel had to run water hoses over a longer distance away from the blaze. The licensed premise is located at least 8-9 blocks away from the fire scene. South Yonkers was inundated with smoke that clung low to the ground with a heavy smell permeating the area. The news media fully covered the event with several news helicopters hovering nearby and live television reports. There were road closures and traffic backups throughout the area which also included McLean Avenue.

At approximately 5:05 p.m., firefighting efforts were still ongoing and Sergeant Melvin was transporting police officers back and forth from the precinct to the scene of the fire and setting up posts for crowd control when he was driving along King Avenue, which runs parallel to McLean Avenue, when he noticed a fully charged fire hose running across the roadway. The fire hose had water running through it and was connected to a hydrant. The length of the hose was approximately 300 feet and it led to the kitchen area in the rear of the licensee's premise. It was connected to the licensee's sewage system providing water pressure for their restrooms. Sergeant Melvin notified his supervisors and the licensee's principal, Mr. Rory Dolan, was interviewed. The sergeant noted that the licensed premise was "standing room only". He noted that there were television sets inside the establishment although he did not know what was being telecast.

Sergeant Melvin stated that Mr. Dolan appeared "a little shocked" when confronted with the news about the hose. Mr. Dolan said he would immediately take it down, but by this time the police were already removing it. The hose and the wrench on the hydrant were removed and vouchered as evidence. The hose had had its identification removed so that

Westchester OP 1052133                          8
Docket #s 3726/04, 3727/04
Case #s   13372,   13889

its "owner" could not be determined.  Furthermore, the sergeant stated that Yonkers fire hydrants require a special connector that can be used only by the Yonkers Fire Department and no one else.  The matter was referred to the Fire Department that day and they sent someone who went to the licensed premise and issued a city ordinance summons to Mr. Dolan.  A City Court of Yonkers disposition reflected that Mr. Dolan pled guilty to a reduced charge and paid a $1000 fine on December 17, 2004 (Exhibit"11").

Mr. Rory Dolan stated that on March 16, 2003, he was preparing for a pre St. Patrick's Day dinner for that evening.  The fire had started around 3-4 o'clock and the restaurant began to lose water pressure.  He was getting paper goods (paper plates and cups) and ice from various locations.  They were booked for 350 meals in both rooms.  There were no washing machines so that the dishes could be cleaned.  The Fire Department person came around 7:00 p.m. that evening.  He was told about the fire hose then and he had known nothing about it.  He discovered afterwards that a handyman/porter employee (Paddy Brady) who had been hired a few months earlier had made the fire hydrant connection.  Mr. Dolan had not given any instructions for Brady to connect the hose to the hydrant.  Mr. Dolan paid a $1000 fine for the incident.  He did not know how long the hose had been connected.  Brady left the job nearly 2 weeks later.  Mr. Dolan stated that he had not been aware that a fire hose had been connected to his establishment.  He did not believe that the water pressure had been restored even with a fire hose leading to his premise.

**OPINION:**

The evidence in the record is substantial to support the charge herein.  The testimonial evidence clearly supports a finding that the licensee tampered with firefighting equipment by having a fire hose connected to a fire hydrant.  The licensee was not authorized to have the fire hose or the unique connector that is available for the use of the Yonkers Fire Department only.  Mr. Rory Dolan's explanation that he was not aware of the use of the fire hose is completely incredible and implausible.  The licensee paid a fine of $1000 to the City Court of Yonkers for the violation.  Therefore, Charge 1 is sustained.

*As to Charge 2 in Case #13372:*

*As to police officer Richard Madaffari:*

*As to August 23, 2003:*

## FINDINGS OF FACT:

On August 23, 2003, at approximately 2:30 a.m., police officer Richard Madaffari (Yonkers Police Department) and his partner Officer Kostik were dispatched to the licensed premise for a report of an assault in progress.  Upon arriving, officer Madaffari observed a male sitting on the sidewalk holding a towel covering his head.  The male was bleeding profusely from a laceration to his eye.  The male, Stephen Spear, told the police that there had been a verbal argument inside the bar with a couple of males.  The bouncers then removed the three men outside the bar.  One of the males then punched the victim with his fist in the face.  The second male struck the victim in the eye with a bottle causing the laceration.  This occurred just outside the entrance of the establishment approximately 5-10 feet away.  Mr. Spear was taking by an ambulance to a hospital where he was admitted.  A statement was taken from the licensee's security staff, Mr. Paul Ryan, which indicated that he observed the verbal dispute outside and the punching of the victim by the first male.  Officer Madaffari had no further details as to the nature of the dispute inside the establishment or its duration.  No additional details were elicited from the victim regarding the dispute and the altercation.

## OPINION:

The evidence in the record is not substantial to support the charge herein.  The physical altercation occurred outside the establishment after the three disputants were moved outside by the licensee's employees.  There was no evidence in the record that the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation or an assault to occur inside the establishment.  Therefore, Charge 2 is not sustained.

Westchester OP 1052133
Docket #s 3726/04, 3727/04                10
Case #s   13372,  13889

*As to Charges 3 & 4 in Case #13372:*

*As to police officer Gina Perricelli*

*As to October 17, 2003:*

## FINDINGS OF FACT:

On October 17, 2003, approximately 2:15 a.m., Police officer Gina Perricelli (2nd Precinct) of the Yonkers Police Department testified that she responded to the licensed premise for a police dispatcher radio assignment of an unconscious female. The officer found a semiconscious female in the kitchen of the establishment. The female was transferred to a hospital to receive medical treatment. The female victim told the officer that she suffered a head injury, but did not know if the injury was as a result of a fall or a blow to the back of her head. Two males had begun fighting (pushing and shoving) each other just prior to the victim's female friend seeing the victim on the floor in a semiconscious state. The female victim told the officer that she did not believe that she had been struck by anyone. The female victim was 20 years of age and told officer Perricelli that she had been drinking inside the establishment. The police report (Exhibit "3") indicated that the underage female purchased several shots of alcohol. The female (Lea DiPetrillo) had a Rhode Island drivers license that contained her date of birth information of October 30, 1982. No summonses were issued to anyone at the establishment.

## OPINION:

The evidence in the record is not substantial to support Charge 3, but Charge 4 is sustained herein. There were no substantive details as to the altercation incident that occurred inside the establishment with respect to its duration or precluding its occurrence. The evidence did not establish that the female sustained an injury because of a physical altercation. Therefore, Charge 3 is not sustained.

The evidence established that the female had purchased alcoholic beverages at the premise. The female was interviewed by officer Perricelli who told the officer that she had purchased alcoholic beverages after showing Rhode Island drivers identification at the front door to the security staff. The female drank a couple of shots of liquor while inside the bar prior to the altercation incident. I find that a bartender sold an alcoholic beverage to a person less than 21 years of age. Therefore, Charge 4 is sustained.

Westchester OP 1052133                                                11
Docket #s 3726/04, 3727/04
Case #s   13372,   13889

*As to Charges 5 & 6 in Case #13372:*

*As to November 7, 2003 & November 29, 2003:*

**FINDINGS OF FACT AND OPINION:**

There was no evidence presented on behalf of the two charges herein.  Therefore,
Charges 5 & 6 are not sustained.

*As to Charge 7 in Case #13372:*

*As to police officer Richard Gogola:*

*As to November 29, 2003:*

**FINDINGS OF FACT:**

On November 29, 2003, police officer Richard Gogola (Yonkers Police Department) was
at police headquarters when he took a complaint from Robert DeMeglio who said that he
had been at Rory Dolan's with his girlfriend and another friend earlier that night.
DeMeglio became involved in some kind of confrontation with other patrons inside the
bar.  Words were exchanged and there might have been some kind of "little altercation"
and the bouncers escorted both groups outside.  DeMeglio went home and awoke in the
morning with his shoulder bothering him.  He went to the hospital and he was diagnosed
with a dislocated shoulder.  DeMeglio then went to the precinct to file a complaint.
Officer Gogola testified that DeMeglio did not know how he was injured; he did not
know if he had fallen down.  His girlfriend and friend had not seen anything occurring
inside the licensed premise.  Officer Gogola spoke to James Brown, the licensee's head
security, who said that DeMeglio was intoxicated and belligerent with some other patrons
and they were all removed outside.

**OPINION:**

The evidence in the record is not substantial to support the charge herein.  There were no
specific details in DeMeglio's complaint other than a short lived pushing incident inside
the bar that he had with another patron that gave any indication that an assault had
occurred inside the premise.  The evidence does not establish that the licensee suffered or
permitted a disorderly premise to occur by permitting an altercation inside the licensed
premise.  Therefore, Charge 7 is not sustained.

Westchester OP 1052133                    12
Docket #s 3726/04, 3727/04
Case #s   13372,   13889

*As to Charge 8 in Case # 13372:*

*As to police officers Gina Perricelli and Joseph Kostik:*

*As to December 13, 2003:*

## FINDINGS OF FACT:

On December 13, 2003, at approximately 2:00 a.m., Police officer Gina Perricelli (Yonkers Police Department) with her partner, officer Halpin, were driving in their police vehicle when they observed a male outside the establishment attempting to enter the premise. Officer Perricelli observed the male yelling loudly and swinging his arms in an angry fashion and causing a crowd to gather. The male was abusive to the security staff at the front door. The male was visibly intoxicated and upon being arrested the police found that he had marijuana and a marijuana pipe in his possession. Officer Perricelli was told by the security staff at the door that the male had been removed earlier from inside of the establishment for causing a disturbance and then kept attempting to reenter the premise. The male, Vincent Curry, was arrested by the police for disorderly conduct and marijuana possession.

Sean Cassidy, the licensee's bartender, testified that he was working on December 13, 2003 behind the bar counter when he heard a yell. He looked over and saw a customer strike another in the face with a bottle. Mr. Cassidy immediately came out from behind the bar, but before he could intervene the bar's security staff were already separating the customers. The two men were separated and removed to the street. Mr. Cassidy handed over a towel to the victim since he was bleeding from his face. There had been no warning or argument overheard that would have alerted the licensee that an altercation was about to occur.

## OPINION:

The evidence in the record is not substantial to support the charge herein. There was no evidence as to the duration of the incident before the altercation occurred. The evidence is not establish that the licensee should have anticipated an altercation and prevented it from occurring. Therefore, Charge 8 is not sustained.

Westchester OP 1052133                    13
Docket #s 3726/04, 3727/04
Case #s  13372,  13889

*As to December 13, 2003: Second Incident*

*As to police officer Joseph Kostik:*

## FINDINGS OF FACT:

On December 13, 2003, at approximately 2:10 a.m., Police officer Joseph Kostik (Yonkers Police Department) was driving an unmarked police vehicle when he was stopped by Luis Gomez, who told the officer that he had been inside the licensed premise when Thomas Sabatano began to yell at him and then struck him in the face several times causing pain and swelling. Sean Cassidy, the licensee's bartender, told Officer Kostik that he witnessed the incident. Both men were removed outside of the bar. They were separated and there was no further incident outside when Officer Kostik arrived. Mr. Gómez and Mr. Cassidy provided written statements to the police. Sabatano was arrested and charged with harassment upon Gomez' complaint. No summonses were issued by the police to anyone at the establishment. Officer Kostik had no information as to the cause of the incident or its duration after it had begun.

## OPINION:

The evidence in the record is not substantial to support the charge herein. There were no details regarding the altercation that occurred at the licensed premise. There was no evidence as to how long Sabatano yelled at Gomez before striking him and whether the licensee could have prevented it from occurring. No details were provided by the victim. Therefore, Charge 8 is not sustained.

*As to Charge 9 in Case #13372:*

*As to December 19, 2003:*

## FINDINGS OF FACT AND OPINION:

There was no evidence presented on behalf of the charge herein. Therefore, charge 9 is not sustained.

Westchester OP 1052133                14
Docket #s 3726/04, 3727/04
Case #s   13372,   13889

*As to Charge 10 in Case number 13372:*

*As to the testimony of police officer Anthony Alaimo:*

*As to December 19, 2003:*

## FINDINGS OF FACT:

On December 19, 2003, at approximately 3:40 a.m., police officer Anthony Alaimo (Yonkers Police Department) went was dispatched to the licensed premise over the police radio on a call of there being a fight inside the establishment. The officer went accompanied with several other police officers and his supervisor (approximately 5-10 police officers). Upon entering the premise Officer Alaimo observed that it was "extremely packed and filled with numerous intoxicated patrons". The supervisor, Sergeant Matthew Russo, decided to close the bar several minutes early for everyone's safety. The police escorted the patrons outside of the bar and directed them to leave. The process took approximately 15-20 minutes. Near the end and on the street just outside the bar, Officer Alaimo encountered a patron whom he had told to leave already. The person became belligerent and began using profanity and creating a scene on the street. Officer Alaimo arrested him for disorderly conduct. The officer had not seen this patron served alcoholic beverages inside the establishment. The police did not find any evidence of a fright having occurred at the establishment.

## OPINION:

The evidence in the record is not substantial to support the charge herein. There was no evidence that any patrons were provided with alcoholic beverages while they appeared to be visibly intoxicated. The police did not observe any employees providing alcoholic beverages to visibly intoxicated patrons. Therefore, Charge 10 is not sustained.

*As to Charge 11 in Case # 13372:*

*As to police officer Neal Cromwell:*

*As to December 27, 2003:*

## FINDINGS OF FACT:

On December 27, 2003, at approximately 2:30 a.m., Police officer Neal Cromwell (2nd Precinct) of the Yonkers Police Department responded with his partner, police officer DeGaetano, to a 911 call of a fight at the licensed premise. Upon arriving Officer Cromwell observed 10-15 persons outside of the establishment who were watching two

Westchester OP 1052133                          15
Docket #s 3726/04, 3727/04
Case #s   13372,   13889

males arguing with each other. One of the males had an injury to his face. He told the
police that the other male had struck him with a drinking glass inside the establishment.
Both males were removed outside by the security staff. Officer Cromwell stated that
both males were intoxicated in that they had an odor of alcohol on them and were
unsteady on their feet. Luis Provenzano was arrested for the assault. Mr. Joseph Hogan,
a bartender at the establishment and the victim both pointed out the assailant to the
police. The victim was taken to the hospital where the medical staff advised that a plastic
surgeon be consulted due to the severity of the injury.

Officer Cromwell stated on cross-examination that he did not know if Provenzano had
consumed any alcohol at the licensed premise or whether he had any history of mental
illness.

## OPINION:

The evidence in the record is not substantial to support the charge herein. There was no
evidence as to the duration of the incident or whether the assault could have been
prevented by the licensee. No details were obtained by the police as to any possible
prolonged verbal dispute leading to the altercation. The evidence does not support a
finding that the licensee suffered or permitted a disorderly premise by suffering or
permitting an altercation to occur on the licensed premise. Therefore, Charge 11 is not
sustained.


As to Charges 12, 13, and 14 in Case #13372:

## FINDINGS OF FACT AND OPINION:

The three charges herein are verbatim duplicates of Charges 16, 17, and 18
in the second proceeding in Notice of Pleading of November 23, 2004;
Docket # 3727/04; Case # 13889. They were dealt with in that proceeding.
As such, the 3 charges are not sustained herein.

Westchester OP 1052133                    16
Docket #s 3726/04, 3727/04
Case #s   13372,   13889


**As to Docket # 3727/04; Case # 13889 in Notice of Pleading of November 23, 2004:**
*Proceeding #2*


*As to Charge 1 in Case #13889:*

*As to police officer Gina Perricelli & Neal Cromwell:*

*As to January 1, 2004:*


**FINDINGS OF FACT:**

On January 1, 2004, Police officer Gina Perricelli (Yonkers Police Department) with her partner, Officer Cromwell, were called to the licensed premise by her sergeant.  Upon arriving the officer observed Sergeant Trabucco and a member of the licensee's security staff, Paul Ryan, attempting to arrest a person on the sidewalk in front of the licensed premise.  The male was on the ground and the sergeant was attempting to handcuff him as he resisted arrest.  The bouncer was assisting the sergeant in making the arrest.  The male had been removed from the establishment because he had been on the dance floor waving a knife in the air.  The bouncer sustained a small cut to his pinky finger while helping to remove the male.  The arrested male was identified as Silverio Macias and he was visibly intoxicated.  He had slurred speech and bloodshot eyes as well as a strong odor of alcohol on his person.

Officer Cromwell stated that Mr. Ryan told him that the male had been harassing other patrons on the dance floor and was asked to leave.  Once he was escorted outside, the male pulled a knife and cut Mr. Ryan on his small finger.

**OPINION:**

The evidence in the record is not substantial to support the charge herein.  No activity was seen inside the licensed premise and no details were available that indicated that an assault had occurred inside the licensed premise.  Therefore, Charge 1 is not sustained.

Westchester OP 1052133                    17
Docket #s 3726/04, 3727/04
Case #s   13372,   13889

*As to Charge 2 in Case #13389:*

*As to police officer Dale Hughes:*

*As to February 1, 2004:*

## FINDINGS OF FACT:

On February 1, 2004, at approximately 3:00 a.m., police officer Dale Hughes (Yonkers Police Department) was driving past the licensed premise when he observed a male attempting to reenter the front door of the licensee's bar and being prevented from doing so by two security staff who were using their hands to hold him off. Officer Hughes attempted to interact with the male, Alvin Mulvey, who appeared intoxicated since he had an odor of alcohol about him. Mulvey kept trying to enter the premise and was telling the security staff that they could not keep him out. Mulvey cursed at the police when they intervened and then struggled when they attempted to arrest him. Mulvey sustained a bloody nose when he was physically brought to the ground by the police. Mulvey was processed at police headquarters and charged with disorderly conduct and resisting arrest. The licensee's security person, Frank Hacker, told Officer Hughes that Mulvey had been obnoxious to other patrons inside the bar and he was then removed outside. Officer Hughes stated that the incident had just occurred as he was driving past the premise. He had no further details as to Mulvey's actions inside the bar.

## OPINION:

The evidence in the record is not substantial to support the charge herein. No assault or altercation occurred inside the licensed premise for which the licensee could be held responsible. The patron was ejected from the premise and became disorderly. Therefore, Charge 2 is not sustained.

*As to Charge 3 in Case #13889:*

*As to police officers Gina Perricelli & Richard Hurlburt:*

*As to February 14, 2004:*

## FINDINGS OF FACT:

On February 14, 2004, at approximately 2 15 a.m., Police officer Gina Perricelli (Yonkers Police Department) along with her partner, police officer Richard Hurlburt, were dispatched to the licensed premise regarding a call of a disorderly male in front of the establishment. The officers found a male yelling and flailing his arms at the bouncers

Westchester OP 1052133                18
Docket #s 3726/04, 3727/04
Case #s   13372,   13889

who were at the front door of the establishment. The male had been removed from the establishment by the licensee's security staff because he had attempted to create a fight on the dance floor. The male was very intoxicated and irate and continued screaming and causing a crowd to form. He also had an odor of alcohol on his person. He was identified as Terence McGuire. McGuire had a laceration injury to his forehead reportedly sustained as a result of his attempt to head butt a bouncer and missing and hitting a door instead. He was arrested and taken to a hospital where he was held until he was sober enough to leave. The determination of lack of sobriety was made by the hospital staff.

Officer Hurlburt testified that McGuire was yelling obscenities at the top of his lungs near the licensee's entranceway and attracting a crowd. McGuire was highly intoxicated in that he was slurred in his words and unsteady on his feet with bloodshot eyes. He was aggressive and unruly and was unable to be calmed by the officers. Subsequently, a bouncer told the officer that McGuire had been removed from the bar because he had been fighting on the dance floor. McGuire injured himself in the attempted head butt on the bouncer. Officers Hurlburt and Perricelli brought McGuire to the hospital to receive treatment for his head injury. The officers remained at the hospital for several hours since McGuire was so intoxicated and the hospital staff would not treat him until he was sober.

## OPINION:

The evidence in the record is not substantial to support the charge herein. There were no details as to the alleged fighting on the dance floor. There were no injuries to any other patrons in the establishment. The evidence does not support a finding that the licensee suffered or permitted the licensed premise to become disorderly by suffering or permitting an altercation to occur on the licensed premise. Therefore, Charge 3 is not sustained.


*As to Charges 4 & 5 in Case #13889:*

*As to police officer Vincent Romano:*

*As to May 9, 2004:*

## FINDINGS OF FACT:

On May 9, 2004, at approximately 8:30 a.m., police officer Vincent Romano (Yonkers Police Department) was at police headquarters when a female came in to make a complaint about a missing person. The female, Lisa Naucler, a Manhattan College student, said that her friend did not return to her dormitory room from the previous night.

Westchester OP 1052133                    19
Docket #s 3726/04, 3727/04
Case #s  13372,  13889

They were both less than 21 years of age and had been at the licensed premise when her friend, Linn Modin, a Swedish student, said she was going to the restroom, but did not return to her friends. Naucler spent the night looking for her friend. During this time the "missing person", Linn Modin, called her friend to say that she was back at her dormitory room. The police subsequently interviewed Modin who told them that she had been at the licensed premise on May 9. She denied being at another establishment called the "Heritage Bar". She had left the bar and the next thing she recalls is being at Lawrence Hospital. Officer Romano checked the police activity for the night and found that a police unit responded to an aided call wherein Linn Modin was found intoxicated and vomiting on Sterling Avenue and McLean Avenue. She was brought to the hospital.

At a later point in his shift, officer Romano and two other officers visited the licensed premise and he spoke to Mr. Rory Dolan who stated that he was not aware of any underage persons being in the premise. Mr. James Brown, the person in charge of security, told the officers that he was checking identification at the door and that there had been some patrons who had shown European identification on the previous night.

## OPINION:

*As to Charge 4:*

The evidence in the record is not substantial to support the charge herein. There were no specific details as to how Modin allegedly obtained alcoholic beverages at the premise. The police report regarding the incident (Exhibit "21") merely states that she had entered the establishment with her friends without being requested to show identification at the door. Modin was found on Sterling Avenue and McLean Avenue (by a police unit, sick and intoxicated). Sterling Avenue is located 4 blocks away from the licensed premise. Modin at that time told the police that she had been at the "Heritage Bar" with her friend Lisa. The police looked for Lisa but did not find her. The police report does not provide any details as to what kinds of alcoholic beverages Modin may have obtained or how she obtained them. Both females also indicated that Naucler did not drink any alcoholic beverages at the premise. I do not find the evidence to be substantial in support of the charge that the licensee provided alcoholic beverages to a person less than 21 years of age. Modin was initially not truthful with the police when questioned and while sick and when she would have been expected to tell the truth so as to alleviate any concerns that her friend may have had. There is no basis to believe that she may have told the police the truth (of her being at the licensed premise) after her illness. Therefore, Charge 4 is not sustained.

Westchester OP 1052133                    20
Docket #s 3726/04, 3727/04
Case #s    13372,    13889

*As to Charge 5:*

The evidence in the record is not substantial to support the charge herein.  There was no evidence in the record as to selling, delivering or giving away alcoholic beverages to a visibly intoxicated person.  The alleged intoxicant was never observed inside the licensed premise obtaining alcoholic beverages in an intoxicated state.  The female was found 4 blocks away from the licensed premise sick and intoxicated.  Therefore, Charge 5 is not sustained.

*As to Charge 6:*

*As to May 16, 2004:*

**FINDINGS OF FACT AND OPINION:**

There was no evidence presented on behalf of the charge herein.  Therefore, Charge 6 is not sustained.

*As to Charge 7 in Case #13889:*

*As to May 21, 2004:*

*As to police officer Angelo Prestamo:*

**FINDINGS OF FACT:**

On May 21, 2004, at approximately 11:10 p.m., police officer Angelo Prestamo (Yonkers Police Department) participated in an underage decoy operation to determine whether alcoholic beverages would be sold to a person less than 21 years of age.  Officer Prestamo testified that Joseph Dibenedetto was 20 years of age with a date of birth on September 21, 1983 as shown by a copy of his NYC drivers license that contained that information (Exhibit "13").  Officer Prestamo entered the licensed premise with another police officer dressed in plainclothes and sat at the bar counter where he could clearly make observations of Dibenedetto.  Nearly 10 minutes later, Dibenedetto entered the bar and went to the counter.  Officer Prestamo observed Dibenedetto converse with the bartender who then brought over an opened 12 oz. bottle of Coors Light beer that he gave to the police agent.  Dibenedetto paid for the beer by handing over money to the bartender and he received change in return.  Dibenedetto did not drink any of the beer, but returned the bottle to the counter and left the premise.  Backup police officers waiting outside the bar were notified of the sales transaction.  The manager was informed that

Westchester OP 1052133                    21
Docket #s 3726/04, 3727/04
Case #s   13372,   13889

their bartender, Gene Keane, would be arrested. Mr. Keane subsequently pled guilty to disorderly conduct, conditionally discharged, and paid a $150 fine. Dibenedetto subsequently provided a written statement describing the details of the assignment (Exhibit "14"). Officer Prestamo further stated that Dibenedetto had no identification with him when he entered the establishment as it was withheld by the supervisor.

## OPINION:

The evidence in the record is substantial to support the charge herein. Testimonial and documentary evidence was adduced that established that the licensee's employee sold an alcoholic beverage to a person less than 21 years of age without asking for proof of age. I credit Officer Prestamo's testimony as to his observations and actions regarding the transaction. Therefore, Charge 7 is sustained.

*As to Charges 8 & 9:*

*As to June 20, 2004 & June 25, 2004:*

## FINDINGS OF FACT AND OPINION:

There was no evidence presented on behalf of the two charges herein. Therefore, Charges 8 and 9 are not sustained.

*As to Charge 10 in Case #13889:*

*As to police officers Gina Perricelli & Neal Cromwell:*

*As to July 3, 2004:*

## FINDINGS OF FACT:

On July 3, 2004, at approximately 1:00 a.m., Police officer Gina Perricelli (Yonkers Police Department) and her partner, police officer Neal Cromwell, were flagged down on McLean Avenue by people who told her that there was a dispute at the licensed premise. The officers observed two males physically fighting. They were swinging their fists at each other. The males were standing on the sidewalk approximately 3 feet in front of the entrance door of the establishment. The police officers at the scene stopped the males from fighting and both were arrested. Both men were visibly intoxicated in that they had slurred speech, an odor of alcohol and were unsteady on their feet. When the police attempted to arrest one of the males for disorderly conduct, the other male grabbed

Westchester OP 1052133                    22
Docket #s 3726/04, 3727/04
Case #s  13372,   13889

officer Perricelli and that male (Padraig Lagan) was grabbed by other officers and he fell to the ground where he sustained a forehead injury.  The male was brought to the hospital where he refused medical attention.  However, hospital staff held the male for a few hours until he was sober and could reasonably decline medical attention while in a sober condition.  The two officers remained at the hospital for approximately 2 hours. Afterwards Lagan was brought to jail and arrested.

Officer Cromwell testified that there had been a verbal dispute inside the establishment between the two males and it became a physical dispute outside the establishment according to Lagan.  Both males were highly intoxicated with an overwhelming smell of alcohol coming from both of them.  Mr. Lagan was unsteady on his feet and could barely stand up straight.  The other male was very combative to Lagan and the police.  Officer Cromwell was placing the first male in handcuffs to arrest him and while doing so Mr. Lagan grabbed Officer Perricelli's arm.  Lagan was also arrested for interfering with his associate's arrest.  The males told the officer that they had been drinking inside the establishment.

## OPINION:

The evidence in the record is not substantial to support the charge herein.  The altercation observed by the police was occurring outside the licensed premise and not inside of it. No evidence was shown in the record that a physical altercation had occurred inside the establishment and that it had been merely removed outside by any of the licensee's employees.  Therefore, Charge 10 is not sustained.


*As to Charge 11 in Case #13889:*

*As to police officer Joseph Recine:*

*As to July 4, 2004:*

## FINDINGS OF FACT:

On July 4, 2004, at approximately 2:15 a.m., police officer Joseph Recine (Yonkers Police Department) testified that he was dispatched to the instant licensed premise by police headquarters regarding a large fight.  He observed approximately 50-60 people outside the establishment gathered in front.  The licensee's security staff employee, Paul Ryan, directed the police's attention to two vehicles that had several people in each.  Mr. Ryan told the police that the people in the vehicles were involved in an assault in the bar. Officer Recine observed a gray sedan and a blue SUV.  He chased the gray sedan and followed it at speeds of 60-70 mph before losing sight of it and then he returned to the licensed premise.  The blue SUV had been stopped by another police unit.  Officer Recine spoke to two male victims outside the bar who were bleeding profusely from

significant lacerations to their heads. One of the male victims told the officer that the two men had been dancing in the bar with their girlfriends. The victim was approached by a perpetrator who told him that the victim had pushed or kicked him while he was dancing and the perpetrator demanded an apology which the victim refused to give because he felt that he had done nothing to this person. Both victims were assaulted by eight perpetrators with fists and bottles causing lacerations to their heads. Mr. Paul Ryan was reinterviewed and he told the police that he observed an altercation on the dance floor at which point he and other security personnel escorted all of the parties outside of the premise. The victims waited outside while the perpetrators entered their vehicles that resulted in the police chase. Three suspects were apprehended in the SUV and they were charged with assault in the second-degree. An investigation revealed that the gray sedan had crashed into another parked vehicle and all of its occupants had fled.

Officer Recine stated that he did not know the duration of the verbal confrontation inside the establishment between the perpetrators and victims before they were assaulted.

## OPINION:

The evidence in the record is not substantial to support the charge herein. There were no details as to the duration of the altercation that occurred inside the licensed premise. There was no evidence in the record that the licensee should have anticipated an altercation to have occurred. Therefore, Charge 11 is not sustained.


*As to Charge 12 in Case #13889:*

*As to police officer Paul Api:*

*As to July 9, 2004:*

## FINDINGS OF FACT:

On July 9, 2004, at approximately 3:30 a.m., police officer Paul Api was driving past the licensed premise in his patrol vehicle when he observed 4 licensee's security staff persons chasing a person that had just left the bar. The police followed the chase and intervened. Officer Api was told that the suspect had thrown a bottle and struck a bouncer on the back of his head, which caused some swelling and pain. The security staff chased the male who began to run. The security staff did not catch up with the male because the police intervened. He was arrested and charged with assault in the second-degree. Officer Api stated that the male had been drinking but was not severely intoxicated and was in fact coherent. The male had been at other establishments prior to going to the licensee's premise and had been at the bar for approximately an hour before the incident. He told the police that he was "stupid" and always in trouble. He provided no further explanation as to why he threw the bottle.

Westchester OP 1052133                    24
Docket #s 3726/04, 3727/04
Case #s   13372,   13889

## OPINION:

The evidence in the record is not substantial to support the charge herein. The incident occurred without warning and provocation. There was no evidence that an argument had occurred prior to the male throwing a bottle at the security person. The evidence does not establish that the licensee suffered or permitted the licensed premise to become disorderly by suffering an altercation on the licensed premise. Therefore, Charge 12 is not sustained.

*As to Charge 13 in Case # 13889:*

*As to police officers Richard Hurlburt and Bruce Grossman:*

*As to July 23, 2004:*

## FINDINGS OF FACT:

On July 23, 2004, at approximately 1:20 a.m., police officers Richard Hurlburt and Bruce Grossman were driving past the licensed premise in their patrol vehicle when a male approached them with blood dripping from his hand. The male, identified as Richard Miranda, told the police that he was "going to kill someone". At this point two males came running out from the bar and told the officers that the male with the injured hand had struck one of them with a glass near the dance floor. One of the two males was bleeding from his forehead. The officers handcuffed Richard Miranda to place him under arrest. As they were doing so, a friend of Miranda's shoves officer Hurlburt away from Miranda. Officer Hurlburt then scuffles with this person while attempting to arrest him as well. A crowd of approximately 60 persons are outside watching the police actions. 4-5 of the licensee's security staff come outside to form a wall to keep the crowd away from the police as they effect their arrests. Additional police units were summoned for backup for precautionary reasons due to the large crowd outside the bar, although no one else intervened with the police. The police investigation determined that Miranda had struck one of the males with a glass near the dance floor. James Brown, the employee in charge of security, tells the police that he had observed the verbal dispute, but not the physical altercation. Miranda tells the police that he struck the male victim because he (the victim) was taller than himself (Miranda), but provides no further explanation. Officer Hurlburt states that Miranda and his friend were intoxicated in that they had slurred speech, bloodshot, glassy eyes and a strong smell of alcohol emanated from their breath.

Westchester OP 1052133                    25
Docket #s 3726/04, 3727/04
Case #s   13372,   13889

## OPINION:

The evidence in the record is not substantial to support the charge herein. There were no specific details as to the duration of the incident or whether it could have been prevented by the licensee. Therefore, Charge 13 is not sustained.

*As to Charge 14 in Case #13889:*

*As to police officers Gina Perricelli and Neal Cromwell:*

*As to August 6, 2004:*

## FINDINGS OF FACT:

On August 6, 2004, Police officer Gina Perricelli (Yonkers Police Department) was driving her police vehicle with her partner, police officer Neal Cromwell. The officers observed a male that was being physically removed by his arms from the side door of the licensed premise by bouncers. The male was resisting his removal from inside the establishment and then attempted to reenter the premise. Officer Cromwell approached the male to inform him that he would not be able to reenter the premise. The male then turned around and struck Officer Cromwell on the side of his face. The male was arrested. He was identified as Roland Potts. The male was highly intoxicated. He was arrested and taken to jail. Officer Cromwell received medical attention at a hospital for a contusion.

Officer Cromwell testified that once the patron had been physically removed by the 3 security staff, he attempted to run at them and that is when the officer intervened to prevent any harm from happening to them. Roland Potts then turned around and unexpectedly punched the officer in the face. The male was very combative and was intoxicated, agitated and angry. Mr. Potts smelled of alcohol on his person and has bloodshot eyes and was unsteady standing up. Officer Cromwell had no information as to whether Potts had consumed any alcoholic beverages inside the establishment.

## OPINION:

The evidence in the record is not substantial to support the charge herein. No physical altercation occurred inside the establishment. The police officer was assaulted outside the premise by an apparently intoxicated patron. There is no evidence in the record that the licensee suffered or permitted a disorderly premise inside the licensed premise. Therefore, Charge 14 is not sustained.

Westchester OP 1052133                     26
Docket #s 3726/04, 3727/04
Case #s   13372,   13889

*As to Charge 15:*

*As to August 13, 2004:*

**FINDINGS OF FACT AND OPINION:**

There was no evidence presented on behalf of the charge herein.  Therefore, Charge 15 is not sustained.

*As to Charges 16, 17, and 18:*

*As to Lt. James Regan, officers Gina Perricelli and Neal Cromwell:*

**FINDINGS OF FACT:**

Officer Gina Perricelli testified that there are approximately 16 licensed establishments in the area.  She has been with the bar detail for the last 5-6 years and stated that she has visited the licensed premise approximately once every weekend between 11 p.m. and 5 a.m. for police incidents prior to November 2004.  She spends two thirds of her time at the instant licensed premise versus the other licensed establishments in the area.  She also stated that during her tenure on the bar squad detail she has never issued a summons to anyone at the licensed premise.

Officer Neal Cromwell testified that he has been assigned to the bar detail for approximately over a year (two days a week) and that he has had to visit the licensed premise for incidents approximately 40-50 times in the previous year (2004).  He states that the kinds of things that bring him to the establishments are usually verbal and physical disputes.  The verbal disputes usually create a disorderly condition creating a potential for it to become physical.

Officer Cromwell stated that the police patrol units are constantly moving in the area of all of the licensed establishments during the early part of the evening.  Towards the end of the shift when the patrons will be exiting the bars, the police patrol cars park near Rory Dolan's because of the expectation that people will be disorderly and that there could be fights, assaults and disputes that the police need to address.  85 to 90% of the complaints generated on McLean Avenue are now caused at Rory Dolan's

Officer Cromwell states that the establishment is located in a split commercial residential area.  There are three seven-story residential buildings across the street from the bar as well as a funeral home and other bars.  The officer estimates that there are approximately

Westchester OP 1052133                          27
Docket #s 3726/04, 3727/04
Case #s  13372,  13889

200 people living in each building. Complaints from the residents regarding screaming and yelling from in front of the establishment have been conveyed to the police. Officer Cromwell has received approximately 2 complaints from nearby residents directly regarding disorderly people yelling in front of the licensee's building.

Yonkers police Lieutenant James Regan testified that from March 16, 2003 through November 12, 2004, he was the patrol commander for the evening shift on the McLean Avenue detail. His duties involved patrolling McLean Avenue and paying attention to all the bars in establishments along this strip. The licensee's premise is the largest on McLean Avenue of the approximately 14-15 premises on the mile-long block. Lieutenant Regan stated that he has spoken to the licensee's principal, Mr. Rory Dolan, and their head of security, James Brown, regarding issues of checking proper identification at the front door to prevent underage drinking, as well as preventing already intoxicated persons from entering the bar so that no further problems may result. Another concern brought to James Brown's attention was patrons leaving by the side door carrying beer bottles outside of the bar. The lieutenant has discussed these issues as well as security issues with management several times.

Lieutenant Regan also stated that he was concerned with how the security staff was identifying patrons with their licenses or what ever form of identification they had. Patrons leaving the bar were found to be less than 21 years of age. He suggested a machine that could verify identifications, to determine whether they are valid or not, and the licensee did obtain such a device and put it at the front door. The lieutenant personally checked on the age verification device and he noted that it was being used by the licensee's employees at the front door. The lieutenant is aware that persons attempting to enter the establishment that are intoxicated have been prevented from entering and when the person becomes belligerent about being denied entry, the police have responded to deal with the situation. The lieutenant advised the licensee to call the police in these situations of intoxicated persons and they have cooperated.

Lieutenant Regan stated that his police officers have dealt with assaults, disorderly persons, loud noise, intoxicated persons, resisting arrest, bottle throwing incidents, and underage drinking at the licensed premise during this time frame.

Lieutenant Regan stated that prior to March 2003 the police did not visit the establishment very frequently at all. He believed that a change in the kind of patrons visiting the establishment created additional problems. Furthermore, since November 12, 2004 the police also have not needed to respond to incidents at the licensed premise as on prior occasions because in his opinion security has improved and "things have calmed down or quieted down". The lieutenant stated that up until 11 o'clock p.m. at night there is a dinner crowd and little or no police intervention is needed. After that the crowd is younger mid-20s to mid-30s, Caucasian and middle-class, male and females. Patrons become more intoxicated and words or a push or shove turns into a fistfight or bottle throwing incident.

Westchester OP 1052133                    28
Docket #s 3726/04, 3727/04
Case #s  13372,  13889

Lieutenant Regan made reference to a supplementary report from the Yonkers Police Department (Exhibit "28") that kept a running count of the times that the police were sent or addressed a problem at the bar. There were 144 entries in the report and the lieutenant acknowledged that this figure would also include unsubstantiated complaints as well; 20 such calls were listed as "unfounded/gone upon arrival". The report reflected disorderly conduct arrests, resisting arrest, assaults and several assault arrests as well as some larcenies occurring in the vicinity of the licensed premise for which the police responded. There were 19 "disorderly crowds" entries and the lieutenant indicated that some of the calls involved complaints from neighborhood residents regarding people in front of the bar arguing or yelling loudly or intoxicated persons making noise on the street. The report reflected 35 arrests in approximately 13 months and the lieutenant stated that that is an exceptional number for that time frame (July 1, 2003 through August 1, 2004). Most of the cases involved patrons coming in and out of the licensee's bar. Some of the arrests could have included patrons denied entry by security because they are intoxicated and then the incident escalates with the police becoming involved. There were 19 police responses for "disorderly crowds/disputes/non-medical intoxicated persons". There were 5 police responses "loud music calls". There were 6 "medical/intoxicated person" police responses. There were 15 "disorderly conduct" responses. There were 7 "resisting arrest" responses. There were 8 "assault 2nd-degree"; 3 "assault 3rd degree"; 2 "harassment" and 2 "menacing" responses by the police.

## LICENSEE'S DEFENSE:

James Brown, the licensee's head of security and night floor manager, testified that he previously worked as a police officer in New York City for 28 years and retired with the rank of sergeant. He has experience with verification of identification cards. The licensee obtained an electronic machine to verify customer's identification provided at the front door. The device, an Intel Check provides computerized verification of 40 licenses in the United States. It will show that a drivers license is legitimate. The license's photograph is matched against the person presenting it and is seen by the person at the front door. Only governmental identification which also includes passports is acceptable to gain entry into the bar. The device is used starting at 9:00 p.m.. Prior to that, the bartenders verify identifications of the customers.

Mr. Brown stated that he deals with a dispute inside the bar by telling the customers to go their separate ways. If they persist then they are told to leave and are escorted from the bar. Once outside the bar, the police may be called if the customers become belligerent "in certain circumstances". The police have been contacted occasionally.

Mr. Brown stated that there is usually six security staff working on Thursday through Saturday. They have assigned posts such as the side door, the dance floor, the bathroom and the dining area in the main room. There is a dress called requirement to enter the bar. Proper governmental identification is required. Intoxicated customers are denied entry especially since they tend to become involved in altercations. Mr. Brown acknowledged

Westchester OP 1052133                  29
Docket #s 3726/04, 3727/04
Case #s   13372,  13889

that patrons have gotten into fights inside the establishment and that this sometimes also occurs when the customers are not intoxicated. He stated that he has not had to deal too often with intoxicated patrons, but that it does happen occasionally.

Rory Dolan testified that he has been the owner since 1994. He is at the premise during the day and at night Mr. Brown and another manager are in charge. The establishment is open for lunch and dinner. There is a full menu, bar menu and children's menu as well. There are menus four weddings and christenings that are held at the "party room". Most of the patrons are from the local area in Yonkers. The licensee conducts fund-raising events and helps with local charities in the area. Mr. Dolan referred to approximately over 300 letters from local community groups and organizations such as churches and schools that the licensee has helped support or sponsor over the last few years (Exhibit "C").

## OPINION:

*As to Charges 16, 17, & 18:*

The evidence in the record is substantial to support the three charges herein. The testimonial and documentary evidence presented herein shows that the Yonkers Police Department has had to respond to incidents occurring in front of and inside the licensed premise on a frequent basis from March 16, 2003 through November 23, 2004. The record cited several instances of injured patrons from within the establishment requiring hospitalization and numerous occasions of intoxicated patrons having been removed from the establishment. The licensee argued that intoxicated patrons were refused entry because of their inebriated state. They also argued that there is no evidence that the intoxicated persons had actually consumed alcoholic beverages inside the premise. I do not accept these arguments as valid. Although there were some instances where an intoxicated patron was at the front door attempting to reenter and they may have possibly been denied entry for the first time, the majority of times it appeared that the intoxicated person had already been inside and had caused a disturbance necessitating his removal from the establishment. There have been 35 arrests that have occurred over a 13 month period (from July 1, 2003 through August 1, 2004) according to Lt. Regan's computer report (Exhibit "28") and he stated that this was "exceptional" in the amount of arrests. I therefore find that there have occurred disturbances, misconduct and disorder on the licensed premise and that it is a focal point for police attention. Therefore, charge 16 is sustained.

Westchester OP 1052133                    30
Docket #s 3726/04, 3727/04
Case #s   13372,   13889

*As to Charge 17:*

Officers Perricelli and Cromwell testified about complaints from the neighborhood regarding disorderly patrons in front of the establishment. Lieutenant Regan's police report also reflects calls for loud music and disorderly conduct at the establishment. I therefore find that there occurred noise, disturbance, misconduct or disorder in the licensed premise, in front of or adjacent to the licensed premise that adversely affects or tends to affect the protection, health, welfare, safety or repose of the inhabitants of the area in which the licensed premise is located. Therefore, Charge 17 is sustained.

*As to Charge 18:*

The licensee submitted photographs of the large private party/side room (Exhibit "B") and over 300 letters in support praising the licensee for their contributions (Exhibit "C") in which they sponsored, participated or donated goods, services, access to the party room or fund-raising money to the neighborhood charities. There is no denying that the licensee has received much praise for their contributions to the neighborhood and the City of Yonkers in general. However, the conduct of its patrons has become an issue for the police that require constant monitoring. Lieutenant Regan stated that there had been a time when there were few if any police responses at the licensed premise. But that is not the situation now. He stated that the patrons who frequent the establishment after 11:00 p.m. create problems. They are more intoxicated and they become involved in more disorderly conduct situations. Furthermore, I find that the licensee does not take appropriate steps in dealing with altercations that occur inside the premise. I find that when customers are involved in verbal arguments or physically fighting that both disputants or both combatants are removed from the establishment at the same time. Thus, the licensee is only removing the problem outside and not dealing with it as they should. One party is not separated and held or detained inside the premise from the other party who should be sent away outside, to make certain that they will not become involved in a fight or altercation outside the licensed premise. In addition, persons who have sustained serious injuries such as when they are struck by a bottle are found outside holding a towel to their injury on the street. There is little or no evidence that the licensee calls the police and identifies themselves as employees or management calling on behalf of a wounded or injured patron. I therefore find that there has existed a sustained and continuing pattern of noise, disturbance, misconduct or disorder on or about the licensed premise related to the operation of the premise and the conduct of its patrons which adversely affects the health, welfare, or safety of the inhabitants of the area in which the licensed premise is located. Therefore, Charge 18 is sustained.

Westchester OP 1052133                    31
Docket #s 3726/04, 3727/04
Case #s   13372,   13889

## CONCLUSION:

### *As to Docket # 3726/04; Case # 13372:*

Charges 1 and 4 are sustained.

Charges 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 are not sustained.


### *As to Docket # 3727/04; Case # 13889:*

Charges 7, 16, 17, and 18 are sustained.

Charges 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, and 15 are not sustained.

Date: January 12, 2006                  Ed Rodriguez
                                        Administrative Law Judge

**STATE OF NEW YORK**
**DIVISION OF ALCOHOLIC BEVERAGE CONTROL**

84 Holland Avenue
Albany, NY 12208

317 Lenox Avenue
New York, NY 10027

125 Main Street
Buffalo, NY 14203

*********************************************************************************************

1. That on 1/1/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

2. That on  2/1/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

3. That on 2/14/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

4. That on 5/9/04, in violation of subdivision 1 of section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a person or persons actually under the age of twenty-one years.

5. That on 5/9/04, in violation of subdivision 2 of section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a visibly intoxicated person.

6. That on 5/16/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

7. That on 5/21/04, in violation of subdivision 1 of section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a person or persons actually under the age of twenty-one years.

8. That on 6/20/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

9. That on 6/25/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

10. That on 7/3/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

11. That on  7/4/04 , the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

12. That on  7/9/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

13. That on 7/23/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

14. That on  8/6/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

15. That on 8/13/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

16. That on and before 11/23/04 an on a continuing basis, the occurrence of noise, disturbance, misconduct or disorder in the licensed premises, in front of or adjacent to the licensed premises, or in the parking lot of the licensed premises has resulted in the licensed premises becoming a focal point for police attention; all cause for revocation, cancellation or suspension of the license in accordance with rule 36.1(q) of the Rules of the State Liquor Authority [9 NYCRR 53.1(q)].

17. That on and before 11/23/04 and on a continuing basis , the occurrence of noise, disturbance, misconduct or disorder in the licensed premises, in front of or adjacent to the licensed premises, or in the parking lot of the licensed premises adversely affects or tends to affect the protection, health, welfare, safety or repose of the inhabitants of the area in which the licensed premises are located; all cause for revocation, cancellation or suspension of the license in accordance with rule 36.1(q) of the Rules of the State Liquor Authority [9 NYCRR 53.1(q)].

18. That on and before 11/23/04, in violation of subdivisions 1 and 3 of section 118 of the Alcoholic Beverage Control Law there has existed a sustained and continuing pattern of noise, disturbance, misconduct or disorder on or about the licensed premises, related to the operation of the premises or the conduct of its patrons, which adversely affects the health, welfare, or safety of the inhabitants of the area in which the licensed premises are located.

PLEASE TAKE NOTICE THAT YOUR FAILURE TO PLEAD WILL BE DEEMED A "NO CONTEST" PLEA AND NO FURTHER HEARING WILL BE HELD.

PLEASE TAKE FURTHER NOTICE that you may be represented by counsel.  If you need a translator, you must bring one with you at your own expense.

PLEASE TAKE FURTHER NOTICE that you may plead to the charge(s) by mail instead of by personal appearance provided that a letter signed by you or your attorney, setting forth your plea of "Not Guilty" or "No Contest" is received by the Office of Counsel of the Division of Alcoholic Beverage Control at the above New York City address on or before the pleading date specified above.

PLEASE TAKE FURTHER NOTICE that the maximum penalty may be a revocation and forfeiture of the Bond filed by you, and or a civil penalty.  In addition, if the Authority revokes the license, the Authority may proscribe the issuance of a license at the premises for a period of two years from the date of revocation of the license.

**STATE OF NEW YORK**
**DIVISION OF ALCOHOLIC BEVERAGE CONTROL**

84 Holland Avenue
Albany, NY 12208

317 Lenox Avenue
New York, NY 10027

125 Main Street
Buffalo, NY 14203

*********************************************************************************

IN THE MATTER OF PROCEEDINGS TO CANCEL OR REVOKE

1052133, WESTCHESTER OP 2441

JMR RESTAURANT CORP

890 MCLEAN AVENUE
YONKERS, NY 10704

**NOTICE OF PLEADING**

<u>3727-2004/Case No. 13889</u>

PLEASE TAKE NOTICE, that pursuant to Section 118 of the Alcoholic Beverage Control Law you are required to answer by mail as provided below, or in person, at the office of the **Division of Alcoholic Beverage Control, Harlem Center, 317 Lenox Avenue, 4th Floor, (between 125th & 126th Streets), New York, New York 10027**, on **12/22/2004**, at 11:00 AM, in connection with proceedings to cancel or revoke the above-referenced license, and to plead to the following charge(s):

# STATE OF NEW YORK
## DIVISION OF ALCOHOLIC BEVERAGE CONTROL

84 Holland Avenue
Albany, NY 12208

317 Lenox Avenue
New York, NY 10027

125 Main Street
Buffalo, NY 14203

*************************************************************************************************

.1. That on 1/1/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

2. That on 2/1/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

3. That on 2/14/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

4. That on 5/9/04, in violation of subdivision 1 of section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a person or persons actually under the age of twenty-one years.

5. That on 5/9/04, in violation of subdivision 2 of section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a visibly intoxicated person.

6. That on 5/16/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

7. That on 5/21/04, in violation of subdivision 1 of section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a person or persons actually under the age of twenty-one years.

8. That on 6/20/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

9. That on 6/25/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

10. That on 7/3/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

11. That on 7/4/04 , the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

12. That on 7/9/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

13. That on 7/23/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

14. That on  8/6/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

15. That on 8/13/04, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

16. That on and before 11/23/04 an on a continuing basis, the occurrence of noise, disturbance, misconduct or disorder in the licensed premises, in front of or adjacent to the licensed premises, or in the parking lot of the licensed premises has resulted in the licensed premises becoming a focal point for police attention; all cause for revocation, cancellation or suspension of the license in accordance with rule 36.1(q) of the Rules of the State Liquor Authority [9 NYCRR 53.1(q)].

17. That on and before 11/23/04 and on a continuing basis  , the occurrence of noise, disturbance, misconduct or disorder in the licensed premises, in front of or adjacent to the licensed premises, or in the parking lot of the licensed premises adversely affects or tends to affect the protection, health, welfare, safety or repose of the inhabitants of the area in which the licensed premises are located; all cause for revocation, cancellation or suspension of the license in accordance with rule 36.1(q) of the Rules of the State Liquor Authority [9 NYCRR 53.1(q)].

18. That on and before 11/23/04, in violation of subdivisions 1 and 3 of section 118 of the Alcoholic Beverage Control Law there has existed a sustained and continuing pattern of noise, disturbance, misconduct or disorder on or about the licensed premises, related to the operation of the premises or the conduct of its patrons, which adversely affects the health, welfare, or safety of the inhabitants of the area in which the licensed premises are located.


PLEASE TAKE NOTICE THAT YOUR FAILURE TO PLEAD WILL BE DEEMED A "NO CONTEST" PLEA AND NO FURTHER HEARING WILL BE HELD.

PLEASE TAKE FURTHER NOTICE that you may be represented by counsel.  If you need a translator, you must bring one with you at your own expense.

PLEASE TAKE FURTHER NOTICE that you may plead to the charge(s) by mail instead of by personal appearance provided that a letter signed by you or your attorney, setting forth your plea of "Not Guilty" or "No Contest" is received by the Office of Counsel of the Division of Alcoholic Beverage Control at the above New York City address on or before the pleading date specified above.

PLEASE TAKE FURTHER NOTICE that the maximum penalty may be a revocation and forfeiture of the Bond filed by you, and or a civil penalty.  In addition, if the Authority revokes the license, the Authority may proscribe the issuance of a license at the premises for a period of two years from the date of revocation of the license.

**STATE OF NEW YORK**
**DIVISION OF ALCOHOLIC BEVERAGE CONTROL**

84 Holland Avenue                        317 Lenox Avenue                               125 Main Street
Albany, NY 12208                         New York, NY 10027                            Buffalo, NY 14203
********************************************************************************************

PLEASE TAKE FURTHER NOTICE: If you plead not guilty to the charge(s), a hearing will thereafter be scheduled at which you may appear with counsel, produce witnesses, and introduce evidence in your behalf.

PURSUANT TO SECTION 301 of the State Administrative Procedure Act, interpreter services shall be made available to deaf persons, at no charge, by the Authority.

Licensee's name and residence address
DOLAN, PEADAR
35 KING STREET YONKERS NY 10704

Licensee's Landlord
JOHN A VACCARO
242 KIMBALL AVENUE YONKERS NY 10704

Notice to Landlord: As stated above, in the event the disposition of this case results in a Revocation of the license, the Authority may impose, as part of the penalty, a two year prohibition against the issuance of any alcoholic beverage license at these premises.

Date:    11/23/2004

DIVISION OF ALCOHOLIC BEVERAGE CONTROL
Robert F. Buckley, Associate Attorney
Office of Counsel
by:      Buckley, Robert
317 Lenox Avenue
New York, New York 10027

Tel:  [212] 961-8343
Fax:  [212] 961-8316

Certified Mail #  7001 2510 0002 3248 8328

*Exhibit I*      *W6p #1*

**STATE OF NEW YORK**
**DIVISION OF ALCOHOLIC BEVERAGE CONTROL**

84 Holland Avenue
Albany, NY 12208

317 Lenox Avenue
New York, NY 10027

125 Main Street
Buffalo, NY 14203

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IN THE MATTER OF PROCEEDINGS TO CANCEL OR REVOKE**

1052133, WESTCHESTER OP 2441

**NOTICE OF PLEADING**

JMR RESTAURANT CORP

**3726-2004/Case No. 13372**

890 MCLEAN AVENUE
YONKERS, NY 10704

PLEASE TAKE NOTICE, that pursuant to Section 118 of the Alcoholic Beverage Control Law you are required to answer by mail as provided below, or in person, at the office of the **Division of Alcoholic Beverage Control, Harlem Center, 317 Lenox Avenue, 4th Floor,** (between **125th & 126th Streets), New York, New York 10027,** on **12/22/2004,** at 11:00 AM, in connection with proceedings to cancel or revoke the above-referenced license, and to plead to the following charge(s):

CM.  1. That on 3/16/03, the licensee violated rule 54.3 of the Rules of the State Liquor Authority [9 NYCRR 48.3], in that it did not conform with all applicable building codes, and/or fire, health, safety and governmental regulations in that the licensee tampered with firefighting equipment; all cause for revocation, cancellation or suspension of the license in accordance with rule 36.1(f) of the Rules of the State Liquor Authority (9 NYCRR 53.1(f)].

RM  2. That on 8/23/03, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

G.P.  3. That on 10/17/03, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

G.P.  4. That on 10/17/03, in violation of subdivision 1 of section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a person or persons actually under the age of twenty-one years.

5. That on 11/7/03, in violation of subdivision 2 of section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a visibly intoxicated person.

6. That on 11/29/03, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on and about the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

RG  7. That on 11/29/03, in violation of subdivision 2 of section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a visibly intoxicated person.

G.P.  8. That on 12/13/03, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

9. That on 12/19/03, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

AA  10. That on 12/19/03, in violation of subdivision 2 of section 65 of the Alcoholic Beverage Control Law, the licensee sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to a visibly intoxicated person.

NC  11. That on 12/27/03, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting an altercation and/or assault to occur on the licensed premises in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law.

*Suprt 16*  12. That on and before 11/23/04 and on a continuing basis, the occurrence of noise, disturbance, misconduct or disorder in the licensed premises, in front of or adjacent to the licensed premises, or in the parking lot of the licensed premises has resulted in the licensed premises becoming a focal point for police attention; all cause for revocation, cancellation or suspension of the license in accordance with rule 36.1(q) of the Rules of the State Liquor Authority [9 NYCRR 53.1(q)].

*Sup 17*  13. That on and before 11/23/04 and on a continuing basis, the occurrence of noise, disturbance, misconduct or disorder in the licensed premises, in front of or adjacent to the licensed premises, or in the parking lot of the licensed premises adversely affects or tends to affect the protection, health, welfare, safety or repose of the inhabitants of the area in which the licensed premises are located; all cause for revocation, cancellation or suspension of the license in accordance with rule 36.1(q) of the Rules of the State Liquor Authority [9 NYCRR 53.1(q)].

*p 18*  14. That on and before 11/23/04, in violation of subdivisions 1 and 3 of section 118 of the Alcoholic Beverage Control Law there has existed a sustained and continuing pattern of noise, disturbance, misconduct or disorder on or about the licensed premises, related to the operation of the premises or the conduct of its patrons, which adversely affects the health, welfare, or safety of the inhabitants of the area in which the licensed premises are located.

PLEASE TAKE NOTICE THAT YOUR FAILURE TO PLEAD WILL BE DEEMED A "NO CONTEST" PLEA AND NO FURTHER